**Timothy COFFER, Respondent,**

v.

**Angela WASSON–HUNT,
et al., Appellants.**

**No. SC 89605.**

Supreme Court of Missouri,
En Banc.

March 17, 2009.

As Modified May 5, 2009.

William E. Quick, Anthony W. Bonuchi, Kansas City, MO, Lisa S. Morris, Daniel J. Haus, Office of General Counsel, Kansas City, MO, for Appellants.

John P. O'Connor, Wagstaff & Cartmell, Michael L. Belancio, Kansas City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

The Kansas City Board of Police Commissioners appeals a judgment setting aside the board's termination of police officer Timothy Coffer. The board terminated Coffer after finding that he had violated several police policies in connection with the arrest of a drunk driver.

## FACTS

On September 12, 2003, Coffer, along with officer Aaron Bryant, observed a car traveling at a high rate of speed with a flat front tire and sparks emitting from the wheel. Coffer and Bryant stopped the car. Coffer asked the driver, Halgene Lucas, to exit the vehicle. Lucas placed his hands outside the driver's side window but did not exit the vehicle immediately. Coffer pulled Lucas from the car. While doing so, Lucas' hand brushed against Coffer's gun. Coffer then punched Lucas several times. Bryant handcuffed Lucas. After Lucas was handcuffed, Coffer punched Lucas at least two more times. Coffer then picked up Lucas and dropped him face-down onto the pavement, spit on him, and directed profanities at him. The arrest was recorded on the patrol car's video system, but there was no audio recording.

Coffer was served with written charges alleging that he had violated policies prohibiting the use of excessive force in executing an arrest and was given notice that he had a right to a hearing. Coffer voluntarily waived his right to a hearing before the board and opted to present his case to a hearing officer.

The hearing was public, and Coffer was represented by counsel. After hearing testimony from several witnesses and viewing the videotape, the hearing officer recommended that Coffer be reinstated. The board reviewed the transcript of the hearing, the videotape and the recommendations of the hearing officer. The board voted unanimously to terminate Coffer's employment. Coffer filed a petition for review in the circuit court, which reversed

the board's decision and ordered that Coffer be reinstated.

### ANALYSIS

An appellate court reviews the decisions of the administrative agency, not the circuit court. *State Bd. of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146, 152 (Mo. banc 2003). The standard of review requires the appellate court to determine "whether the agency's findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law." *Community Bancshares, Inc. v. Secretary of State,* 43 S.W.3d 821, 823 (Mo. banc 2001). This Court must look to the whole record in reviewing the board's decision, not merely at that evidence that supports its decision. *Lagud v. Kansas City Bd. of Police Commissioners,* 136 S.W.3d 786, 791 (Mo. banc 2004). If the evidence permits either of two opposing findings, deference is afforded to the administrative decision. Id.

### I. *Timeliness of Appeal*

Coffer asserts that the board's appeal from the circuit court's judgment is untimely and that the appeal should be dismissed. A notice of appeal must be filed within 10 days after a civil judgment becomes final. Rule 81.04(a). The finality of a judgment is determined by the date the judgment was entered and whether any post-trial motions are filed. Rule 81.05(a). "A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Rule 74.01(a). Under these rules, the board's notice of appeal is timely if it was filed within 10 days of the *later of: (1) 30 days from* the entry of the judgment or

(2) the resolution of all authorized post-trial motions.

The circuit court issued a judgment and sent it to the parties October 5, 2006. The judgment never was file-stamped with a date, however, and was not entered into the docket until November 22, 2006. Coffer asserts that the judgment was not "filed" until it was entered into the docket November 22, 2006, and that the timeline for filing an appeal runs from that date.

Rule 43.02(b) defines "filing" as follows: The filing of pleadings and other papers with the court as required by Rules 41 through 101 shall be made by filing them with the clerk of the court, except that a judge may permit the papers to be filed with judge, who shall note thereon the filing date and forthwith transmit them to the office of the clerk.

Although not entered immediately into the docket, the trial judge signed the judgment October 5 and forwarded it to the court clerk, who then formally sent the judgment to the parties as an official document of the court. Under these facts, therefore, the judgment was filed October 5, not November 22. The November 22, 2006, docket entry simply recorded a judgment that already had been entered. To hold otherwise would conflict with Rule 43.02(b) and the basic principle that "a 'judgment derives its force from the court's judicial act and not from the ministerial act of its entry upon the record.'" *State v. Collins,* 154 S.W.3d 486, 492–493 (Mo.App.2005) quoting *State v. Patterson,* 959 S.W.2d 940, 941 (Mo.App.1998). The judgment was entered October 5, 2006.

The board filed a motion to reconsider the judgment on November 2, 2006. The motion referenced Rule 75.01, which states that the trial court retains control over a judgment for 30 days after entry of judgment. Based on this reference, Coffer concludes that the board's motion is not an authorized after-trial motion that delays

the finality of a judgment under Rule 81.05(a). Despite the reference to Rule 75.01, the board's motion raised alleged factual and legal errors in the judgment and, therefore, qualified as a motion for new trial. *See Taylor v. United Parcel Service, Inc.,* 854 S.W.2d 390, 392 (Mo. banc 1993)(after-trial motions are assessed based on the allegations, not the motion's style or form). The board's motion to reconsider was an authorized after-trial motion for purposes of Rule 81.05(a).

■ The court never ruled on the board's November 2, 2006, after-trial motion. The motion was deemed overruled, therefore, and the judgment became final 90 days later, on January 31, 2007. Rule 81.05(a)(2)(A). The board filed its notice of appeal January 25, 2007. The board's premature notice of appeal became effective January 31, 2007, when the judgment became final. Rule 81.05(b). The board's notice of appeal was filed timely.

## II. *Sufficiency of Evidence*

■ Coffer asserts there was insufficient evidence to support the board's decision to terminate him for excessive use of force, but he is wrong. There was substantial evidence to terminate Coffer's employment. The videotape shows Lucas being handcuffed and restrained. Coffer then proceeds to punch Lucas, pick him up and drop him face-down on the pavement, and spit on him.

In addition to the videotape, the hearing officer heard testimony from Sergeant William Conroy, Captain Roger Lewis and former Police Chief Richard Easley. The parties stipulated that Conroy was an expert in police procedure. Conroy testified that any contact Lucas had with Coffer's gun was only incidental because Lucas

simply hit the weapon as he fell down. Conroy noted that Coffer made no attempt to secure his weapon as he had been trained to do in the event of a "gun grab." Conroy testified that Coffer overreacted by unnecessarily punching Lucas after he had been subdued and then dropping him on the pavement and spitting on him. Conroy characterized the punches as unnecessary "pay back," which met the definition of "excessive use of force."

Lewis filed an investigative report in which he offered his opinion that the "actual threat felt by Officer Coffer is questionable, as he is never observed to visually or physically check the security of his weapon within the holster." Like Conroy, Lewis observed that Coffer continued to punch Lucas after the threat of a gun grab was neutralized. Finally, Easley testified that that the incident was "an extremely serious situation involving excessive use of force" and that the spitting incident caused "an extremely negative perception of the police department."

The videotape plus the statements of Conroy, Lewis and Easley constitute substantial evidence supporting the board's decision. Although Coffer and other officers testifying on his behalf offered different interpretations of the arrest, the board did have substantial evidence on which to base its decision. That reasonable people disagreed as to whether Coffer violated police procedures means only that this Court should defer to the board's findings. *Lagud,* 136 S.W.3d at 791, n. 5.[1]

## III. *"Sham" Proceeding*

Coffer next asserts that the hearing before the designated hearing officer was a "sham" proceeding because the board declined to follow the hearing officer's find-

---

**1.** Coffer also argues there was insufficient evidence in the record of the policies he was charged with violating. Coffer raises this argument for the first time on appeal. The

argument is waived. *Donovan v. Temp. Help,* 54 S.W.3d 718, 719 (Mo.App.2001)(issues not presented to the administrative agency are waived on appeal).

ings and recommendation. The result, according to Coffer, is that he was denied his statutory right to a public hearing before the board.

Section 84.600, RSMo 2000, sets forth the procedure by which the board may terminate an officer's employment. The statute provides that once a disciplinary complaint is made against an officer, the officer "shall have the right to appear before the board at a public hearing...." After reviewing the evidence, the Board is authorized to determine what punishment, if any, shall be imposed. *Id.*

 Section 84.600 grants officers the right to appear before the board. As with any other statutory right, an officer can waive his or her right to appear before the board. *See Shearlock v. Mut. Life Ins. Co. of N.Y.,* 193 Mo.App. 430, 182 S.W. 89, 91 (1916) (holding that a statutory right may be waived); *State v. Emery,* 95 S.W.3d 98, 102–103 (Mo. banc 2003)(defendant waived statutory right to a jury-recommended sentence). By electing to have his case heard before a designated hearing officer, Coffer waived his right to a hearing before the board. Even though Coffer waived his right to a board hearing, section 84.600 specifically vests the board with authority to make the final determination regarding what employment action should be taken. Coffer's decision to waive his right to a hearing did not confer or eliminate any power that the board has under section 84.600.

The board's decision to terminate is affirmed. The circuit court's judgment is reversed, and the case is remanded to the circuit court for entry of judgment consistent with the board's recommendation.

All concur.