326 S.W.3d 38 (2010)
LAKE OZARK/OSAGE BEACH JOINT SEWER BOARD, et al., Respondents,
v.
MISSOURI DEPARTMENT OF NATURAL RESOURCES, Land Reclamation Commission and Magruder Limestone Co., Inc., Appellants.
No. WD 71299.
Missouri Court of Appeals, Western District.
August 31, 2010.
Motion for Rehearing and/or Transfer to Supreme Court Denied November 2, 2010.
Application for Transfer Denied December 21, 2010.
*39 Timothy P. Duggan, Jefferson City, Counsel for Appellants, Land Reclamation & Dept. of Natural Resources.
Michael A. Dallmeyer, Jefferson City, Counsel for Appellant, MaGruder Limestone.
Steven E. Mauer, Kansas City, MO, Counsel for Respondent, Lake Ozark.
John T. Polhemus, Kansas City, MO, Co-Counsel for Respondent, Lake Ozark.
Brian E. McGovern, Chesterfield, MO, Counsel for all remaining Respondents.
Before LISA WHITE HARDWICK, C.J., JAMES EDWARD WELSH, J., and JAMES W. VAN AMBURG, Sp. J.
JAMES EDWARD WELSH, Judge.
The Missouri Land Reclamation Commission, under the Missouri Department of Natural Resources (referred to collectively as "the Commission"), approved Magruder Limestone Company's application for a permit to expand its quarry operations. The Joint Sewer Board for the cities of Lake Ozark and Osage Beach and thirty-two citizens opposed the expansion permit and sought judicial review of the Commission's decision in the circuit court. The circuit court reversed the Commission's decision after finding that the Commission placed the burden of proof on the wrong party, improperly relied upon evidence outside the record, and erroneously determined that Magruder's application was complete when it was originally filed. Magruder and the Commission appeal.[1] We reverse the Commission's decision and remand the cause for a new hearing.
Magruder operates several quarries under a Land Reclamation permit. On April 23, 2007, Magruder filed an application with the Commission to expand its permit to a new site in Miller County. The new site, referred to as the Bowlin Hollow Quarry, consisted of a tract of 212 acres. Magruder requested that it be permitted to engage in surface mining on 205 of those acres, with the proposed mining area set back fifty feet from the tract's boundaries.
The Land Reclamation Program's staff notified Magruder on May 14, 2007, that Magruder's application for the expansion permit met all statutory requirements and that it considered the application complete. The staff further advised Magruder to provide public notice as required by 10 CSR 40-10.020(2)(H). This regulation says that, when the Director of the Land Reclamation Program ("Director") deems an application complete, the applicant "shall publish a notice of intent to operate a surface mine in any newspaper qualified... to publish legal notices in any county where the mine plan is located." Id. The *40 notice is to run once a week for four consecutive weeks, beginning no later than ten days after the application is deemed complete. Id. Magruder published its notice in The Miller County Autogram-Sentinel, a weekly newspaper published in Tuscumbia, the Miller County seat, for four consecutive weeks beginning on May 17, 2007.
On June 15, 2007, the Land Reclamation Program began receiving letters from the public requesting a public meeting regarding Magruder's application. The letters were from several citizens who resided or owned property or businesses in the area surrounding the proposed quarry site. The citizens expressed concern over the effects of the proposed quarry on their homes, health, and businesses. They, along with the mayors of the cities of Lake Ozark and Osage Beach, also expressed concern that the quarry's blasting operations could damage the Joint Sewer Board's waste water treatment plant. The plant is located on land to the north of the proposed Bowlin Hollow Quarry. Additionally, two force main sewer lines, which serve the city of Osage Beach, run through the center of the proposed quarry to the sewer plant.
On June 26, 2007, the Director sent reply letters advising that Magruder had declined to hold an informal public meeting but that recipients had an additional fifteen days to petition for a formal hearing.[2] Thirty-two citizens and the Joint Sewer Board (referred to collectively as "Petitioners") timely requested a formal hearing.[3]
Pursuant to section 444.773.1, RSMo Cum.Supp.2009, the Director issued his formal recommendation to grant Magruder the expansion permit on July 13, 2007. During the Commission's September 27, 2007 meeting, the Commission considered and granted Petitioners' requests for a formal hearing. The Commission subsequently appointed a hearing officer to conduct the hearing.
The formal hearing in this matter was conducted over seven days in March, April, May, and June 2008. Following the hearing, the hearing officer issued a recommended order containing findings of fact and conclusions of law. The hearing officer found that Petitioners failed to prove that their health, safety, or livelihood would be unduly impaired by the impact of Magruder's proposed quarrying operations in the Bowlin Hollow Quarry. The hearing officer further found that Petitioners failed to prove that, during the five years immediately preceding the date of Magruder's permit application, Magruder demonstrated a pattern of noncompliance with environmental law that suggested a reasonable likelihood of future acts of noncompliance. The hearing officer recommended that Magruder's application for an expansion permit be approved, with special conditions,[4] for the area west of the sewer *41 line easement and denied for the area east of the sewer line easement. The approved mining area was limited to approximately fifty-two acres. The Commission approved the hearing officer's recommended order and adopted the hearing officer's findings of fact and conclusions of law as its decision.
Petitioners subsequently filed a petition for judicial review of the Commission's decision in the circuit court. The circuit court determined that the Commission misapplied the burden of proof during the formal hearing and improperly relied upon unscientific evidence that was outside the record. The court further found that Magruder's application was incomplete as originally filed. The court, therefore, reversed the Commission's decision granting the expansion permit and ordered the Commission to hold a new hearing. Magruder and the Commission appeal.
On appeal from the circuit court's review of an agency's decision, we review the agency's actions and not those of the circuit court. Albanna v. State Bd. of Registration for Healing Arts, 293 S.W.3d 423, 428 (Mo. banc 2009). Our review is limited to determining whether the agency's decision was constitutional; was within the agency's statutory authority and jurisdiction; was supported by competent and substantial evidence upon the whole record; was authorized by law; was made upon lawful procedure with a fair trial; was not arbitrary, capricious or unreasonable; and was a proper exercise of discretion. Lagud v. Kansas City Bd. of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. banc 2004); § 536.140.2, RSMo Cum.Supp.2009. In reviewing the agency's decision, we must consider the entire record and not simply the evidence that supports the agency's decision. Coffer v. Wasson-Hunt, 281 S.W.3d 308, 310 (Mo. banc 2009). "If the evidence permits either of two opposing findings, deference is afforded to the administrative decision." Id. We do not defer to the agency's decision on questions of law. Vivona v. Zobrist, 290 S.W.3d 167, 171 (Mo.App.2009).
We will address first Petitioners' claim in their third point, which is that the Commission's decision was improper and illegal because Magruder's application was incomplete as originally filed. Magruder's original application packet did not include a map showing the utility easements and identifying the easement holders as required by section 444.772.3, RSMo Cum. Supp.2006, and 10 CSR 40-10.020(2)(E)2.A. Despite Magruder's failing to include this map, the Director deemed Magruder's application complete on May 14, 2007, and directed Magruder to publish notice of its intent to operate a surface mine. The public had fifteen days from the last date of publication of this notice within which to submit a written request to the Director for a public meeting or hearing on Magruder's application. 10 CSR 40-10.020(2)(H). Those who had requested a public meeting then had fifteen days after receiving notice that Magruder had declined to hold a public meeting to submit a written request to the Director for a formal hearing. 10 CSR 40-10.080(1)(A). Thirty-two citizens and the Joint Sewer Board sent timely requests to the Director for a formal hearing.
Magruder did not file the map showing the utility easements and identifying the easement holders until the Land Reclamation Program's staff asked Magruder to do so in February 2008. Petitioners argue that the Director should have required Magruder to republish its notice at that time, which would have given other members of the public the opportunity to join the case by submitting requests to the Director for a formal hearing. Because *42 the Director did not require Magruder to republish its notice once it filed the map showing the utility easements, and the hearing officer refused five potential petitioners' untimely requests to join the case before Magruder's application was actually complete, Petitioners argue that the Commission's order granting the expansion permit was improper and illegal. We disagree.
The publication of notice is triggered not by an application's actually being complete but by the Director's deeming the application to be complete. Both section 444.772.10 and 10 CSR 40-10.020(2)(H) specifically provide that, when the permit application "is deemed complete by the director," the applicant is to publish notice once a week for four consecutive weeks. The statute further reinforces that actual completeness is not required to trigger the publication of notice as it provides that, if the Director fails to respond to a permit application within forty-five calendar days, the application "shall be deemed to be complete." § 444.772.10. The Director's failure to act in this circumstance results in the application's being automatically deemed complete and triggers the publication of notice, presumably regardless of whether the application is actually complete. Thus, contrary to Petitioners' assertion, the timing of the public notice is not dependent upon the actual completeness of the application, but upon the application's being deemed complete, either by the Director or automatically.
Even if we assume that Magruder's application was not complete on May 14, 2007, when the Director deemed it to be, we fail to see how the Director's deeming the application complete before Magruder filed the map showing the utility easements rendered the subsequent public notice defective. Regulation 10 CSR 40-10.020(2)(H) prescribes the contents of the public notice. The map showing the utility easements is not part of this notice. The information contained on the map is not part of this notice. The public notice is unaffected by the inclusion or exclusion of the map in the application packet.
Petitioners claim that "potential petitioners were denied due process and a chance to be heard based on an incomplete application," but there is nothing in the record to indicate that the absence of the map in Magruder's application packet caused the potential petitioners to submit their requests to join the case outside of the original time limit. Furthermore, the Commission denied the potential petitioners' requests to join the case on other grounds in addition to the fact that their requests were untimely.[5] There has been no challenge to the merits of those other grounds. Thus, the Commission's decision to deny the potential petitioners' requests to join would stand regardless of the timeliness of their requests.
The Director's deeming the application complete before Magruder filed the map showing the utility easements did not invalidate the Commission's ultimate decision to grant the expansion permit. Regulation 10 CSR 40-10.020(1) says that a permit applicant must submit all of the required information before the Commission can issue a permit. Magruder submitted the missing map before the Commission issued the expansion permit.
Petitioners have failed to demonstrate prejudice from the Director's deeming *43 the application complete before Magruder filed the utility easement map. "`[O]nly prejudicial error is reversible error.'" Campbell v. Dir. of Revenue, 297 S.W.3d 656, 659 (Mo.App.2009) (citation omitted). We deny Petitioners' third point.
We will next address Petitioners' allegation of error in their first point. In this point, Petitioners claim that the Commission misapplied the burden of proof because, during the formal hearing, the hearing officer placed the burden of proof on Petitioners rather than on Magruder. The statute governing formal hearings on permit applications is section 444.773. Subsection 3 of this statute provides that where, as in this case, the Director recommends issuing a permit, a formal hearing may be held upon a timely petition from "any person whose health, safety or livelihood will be unduly impaired by the issuance of this permit." Id. Following the formal hearing, if the Commission finds, "based on competent and substantial scientific evidence on the record, that an interested party's health, safety or livelihood will be unduly impaired by the issuance of the permit," then the Commission may deny the permit application. § 444.773.4. The statute further provides that, "[i]n any hearing held pursuant to this section[,] the burden of proof shall be on the applicant for a permit." Id.
While the statute says only that the burden of proof is on the applicant, the regulation promulgated pursuant to the statute makes clear that the burden of proof is broken down into its two components the burden of production and the burden of persuasion[6]and allocates those burdens between the hearing petitioner and the applicant:
The burden of establishing an issue of fact regarding the impact, if any, of the permitted activity on a hearing petitioner's health, safety or livelihood shall be on that petitioner by competent and substantial scientific evidence on the record. Furthermore, the burden of establishing an issue of fact whether past noncompliance of the applicant is cause for denial of the permit application shall be upon a hearing petitioner and/or the director by competent and substantial scientific evidence on the record. Once such issues of fact have been established, the burden of proof for those issues is upon the applicant for the permit.
10 CSR 40-10.080(3)(B). Pursuant to this regulation, the hearing petitioner has the initial burden of production, that is, the "duty to introduce enough evidence on an issue to have the issue decided by the fact-finder." BLACK'S LAW DICTIONARY 223 (9th ed.2009). To meet the burden of production, the petitioner must present "competent and substantial scientific evidence" regarding the impact, if any, of the permitted activity on the petitioner's health, safety, or livelihood.[7] 10 CSR 40-10.080(3)(B).
If the petitioner produces sufficient scientific evidence of the impact of the permitted activity under this standard, the applicant must then satisfy the burden of persuasion, which is the "duty to convince the fact-finder to view the facts in a way *44 that favors that party." BLACK'S, supra at 223. To satisfy the burden of persuasion, the applicant must prove, by competent and substantial scientific evidence, that the petitioner's health, safety, or livelihood will not be unduly impaired by the impact from the permitted activity. See 10 CSR 40-10.080(3)(B) and (D).[8]
In its order, the Commission did not distinguish between the burdens of production and persuasion and, instead, repeatedly stated that Petitioners bore the burden of proof and that the applicant, Magruder, bore no burden. Specifically, the Commission said:
The first question to be addressed is simply whether the Petitioners presented competent and substantial scientific evidence on the record, that a petitioner's health, safety or livelihood will be unduly impaired by impacts from quarrying in Bowlin Hollow by the Applicant. Neither [the Director] nor [the] Applicant carries a burden of proof to establish that the permitted activity will not unduly impair a petitioner's health, safety or livelihood. Unless petitioners are able to carry their burden of proof, the expansion of Permit 0086 is to be approved.
. . . .
The burden of proof as it relates to the issues raised and the relief sought by Petitioners is on the Petitioners. The general principle is that the burden of proof rests on the party bringing the action, the Petitioners in the present case. In general, the party seeking to establish a claim bears the burden of proof to establish the entitlement to the claim.
. . . .
The Applicant did not have the burden to prove that the operation of the proposed quarry will not unduly impair the health, safety or livelihood of the petitioners.
The Commission's statements are contrary to the plain language of section 444.773 and 10 CSR 40-10.080(3)(B).[9] Petitioners bore only the burden of producing sufficient scientific evidence to establish an issue of fact that the permitted quarrying operations would impact their health, safety, or livelihood. As the applicant, Magruder bore the burden of persuading the Commission to rule in its favor by proving that the impact from the permitted quarrying operations would not unduly impair Petitioners' health, safety, or livelihood.
Magruder and the Commission argue that the Commission applied the statute and regulation properly because its findings indicate that Petitioners failed to meet their threshold burden of production. The Commission's findings, however, were made by a fact-finder who, by failing to distinguish between the burden of production *45 and the burden of persuasion, evaluated Petitioners' evidence under a higher standardwhether or not it proved undue impairmentthan the statute and regulation require. Petitioners were entitled to have their evidence judged under the correct standardwhether or not it established an issue of factwith the burdens of production and persuasion properly allocated pursuant to section 444.773 and 10 CSR 40-10.080(3)(B) and (D).
Because the Commission failed to apply the burden of proof in accordance with the statute and regulation, its decision was made upon unlawful procedure. Accordingly, we reverse the Commission's decision granting Magruder the expansion permit and remand the cause to the Commission for a new hearing.[10]
All concur.
NOTES
[1] Pursuant to Rule 84.05(e), the Joint Sewer Board and the citizens filed the appellants' brief because they were the parties aggrieved by the Commission's decision, and the Commission, the Department, and Magruder filed the respondents' brief.
[2] The regulations provide that, if the applicant does not agree to a public meeting, a petitioner may request a formal hearing in writing within fifteen days of notification of the applicant's denial of a public meeting. 10 CSR 40-10.080(1)(A).
[3] Only twenty-one of the thirty-two citizens proceeded as petitioners in the formal hearing because the hearing officer dismissed eleven pro se petitioners for failing to attend the pre-hearing conference and failing to file witness lists, written direct testimony, and supporting documents as ordered. Following the Commission's decision, the dismissed pro se petitioners joined in the petition for judicial review but did not seek review of their dismissal from the case.
[4] The special conditions concerned restricting the days, times, and location of the blasting with regard to the sewer line easement; using seismographs to monitor the sewer plant and sewer lines; and restricting the elevation of the mine floor to run at or above the grade of the sewer line easement.
[5] The Commission found that one of the proposed petitioners failed to establish standing for a formal hearing pursuant to 10 CSR 40-10.080(2)(A) and (B); that three of the proposed petitioners failed to request a public meeting, which is a prerequisite to requesting a formal hearing; and that one of the proposed petitioners who had requested a public meeting failed to request a formal hearing.
[6] See Kinzenbaw v. Dir. of Revenue, 62 S.W.3d 49, 53-54 (Mo. banc 2001) (noting that, "[w]hen courts discuss the burden of proof, there are two components: the burden of producing (or going forward with) evidence and the burden of persuasion").
[7] The second sentence of 10 CSR 40-10.080(3)(B) concerns the allocation of the burden of production on the issue of whether an applicant's past noncompliance indicates likely noncompliance in the future. Although Petitioners argued this as a basis for denying Magruder's expansion permit application in the formal hearing, they do not raise the Commission's rejection of this ground on appeal.
[8] Regulation 10 CSR 40-10.080(3)(D) provides that the Commission may deny the permit if it "finds, based upon competent and substantial scientific evidence on the record, that a hearing petitioner's health, safety or livelihood will be unduly impaired by impacts from activities that the recommended mining permit authorizes."
[9] Before adopting the hearing officer's recommended order, the Commission questioned him regarding whether the applicant had the burden of proof. According to the minutes of the Commission's meeting, the hearing officer said that "he's read the [s]tatute and regulations regarding this issue and he reads that the burden of proof is upon the persons bringing the action. He stated the applicant does not have to prove the negative, this is in case law." The record indicates that the hearing officer advised the parties early in the proceedings that Magruder bore no burden of proof. In his November 2007 pre-hearing conference order, the hearing officer stated that "[t]he Applicant has no burden of proof to establish that the permitted activity  operation of a limestone mine site, a quarry  does not impact upon the health, safety or livelihood or any individual or entity."
[10] In their second point, Petitioners seek reversal of the Commission's decision and a new hearing based upon the Commission's relying upon unscientific evidence outside the record. Our disposition of Petitioners' first point renders this point moot.