

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **LAKE OZARK-OSAGE BEACH JOINT SEWER BOARD, ET AL.,** | **WD78869** |
| **Appellants,** | **OPINION FILED:** |
| **v.** | **June 14, 2016** |
| **MISSOURI DEPARTMENT OF NATURAL RESOURCES, LAND RECLAMATION COMMISSION AND MAGRUDER LIMESTONE CO., INC.,** | |
| **Respondents.** | |

**Appeal from the Circuit Court of Miller County, Missouri**
**The Honorable Sanford Francis Conley, IV, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.**

The Lake Ozark-Osage Beach Joint Sewer Board and Larry and Vicky Stockman ("Appellants") appeal the Missouri Land Reclamation Commission's decision to grant Magruder Limestone Co., Inc., ("Magruder") a permit to operate a limestone quarry on a site adjacent to a wastewater treatment plant owned and operated by the Lake Ozark-Osage Beach Joint Sewer Board ("Sewer Board").[1] We affirm.

---

[1]This case comes before this Court following our remand in *Lake Ozark/Osage Beach Joint Sewer Board v. Missouri Department of Natural Resources*, 326 S.W.3d 38, 39 (Mo. App. 2010). Portions of the facts and procedural history are adopted from that opinion without further attribution.

**Statutory Framework**

Missouri's Land Reclamation Act ("the Act"), §§ 444.760-.790,[2] is administered by the Director of the Department of Natural Resources ("Department"). § 640.010.6. The stated purpose of the Act is to "strike a balance" between the surface mining of minerals and the reclamation of land subjected to surface disturbance by that mining. § 444.762. To that end, the Act grants the Land Reclamation Commission ("Commission") the power to "[e]xamine and pass on all applications and plans and specifications submitted . . . for the method of operation and for the reclamation and conservation of the area of land affected by the operation." § 444.767(3).

The Act requires any operator desiring to engage in surface mining to "make written application to the director for a permit." § 444.772.1. Once the Director deems the application complete, there is a period of public notice and comment. *Saxony Lutheran High Sch., Inc. v. Mo. Dep't of Nat. Res.*, 404 S.W.3d 902, 906 (Mo. App. 2013) (citing § 444.772.10). The Director must promptly investigate the application and then make a recommendation to the Commission as to whether the permit should be issued or denied. § 444.773.1. If the Director's recommendation is to issue the permit, the Commission is authorized to grant a formal hearing "to formally resolve concerns of the public" before passing on the application. § 444.773.3.

**Factual and Procedural Background**

Magruder operates several quarries under a permit from the Commission. This case originated in April 2007, when Magruder filed an application to expand its permit to operate a limestone quarry on a 212-acre site in Miller County. Magruder sought permission from the Commission to engage in surface mining on 205 of those acres. The new quarry site is adjacent to a wastewater treatment plant operated by the Sewer Board. Magruder's application proposed

---

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement, except where otherwise noted.

2

quarry activity approximately 700 feet from that plant. In addition, two force main sewer lines transverse through the center of the proposed quarry site and transmit all the sewage from the City of Osage Beach to the sewer treatment plant.[3]

Magruder's application was deemed complete, and it published the required notice. Both Magruder and opponents of its permit application then made presentations at the Commission's next public meeting. The Sewer Board and several citizens thereafter requested a formal public hearing, which the Commission granted. The Commission appointed a hearing officer, who conducted seven days of hearings. The hearing officer ultimately recommended that Magruder's expansion permit be approved, with special conditions,[4] for the area west of the sewer line easement. The approved mining area was limited to approximately fifty-two acres. On July 29, 2008, the Commission approved the hearing officer's recommended order and adopted the hearing officer's findings of fact and conclusions of law as its final decision.

The Miller County Circuit Court reversed the Commission's decision to grant the permit. On appeal, this Court found that the decision was made upon unlawful procedure because the Commission incorrectly imposed the burden of persuasion on the petitioners in contravention of § 444.773 and 10 C.S.R. 40-10.80(3). *Lake Ozark/Osage Beach Joint Sewer Bd. v. Mo. Dep't of Nat. Res.*, 326 S.W.3d 38, 45 (Mo. App. 2010). Consequently, we reversed the Commission's decision to grant the permit and remanded with instructions to apply the correct burden of proof in a new hearing. *Id.*

On remand, the Commission designated Commissioner Winn from the Administrative Hearing Commission to take evidence and make recommendations. Following a five-day

---

[3]The City of Osage Beach owns the sewer lines but is not a party to this litigation.

[4]The conditions concerned restricting the days, times, and location of the blasting with regard to the sewer line easement; using seismographs to monitor the sewer plant and sewer lines; and restricting the elevation of the mine floor to run at or above the grade of the sewer line easement. *Lake Ozark/Osage Beach*, 326 S.W.3d at 40 n.4.

hearing, the Commissioner issued a Recommended Decision. She found that the Sewer Board met its burden of production by "establishing issues of fact regarding the impact, if any, of the permitted activity on [its] health, safety, or livelihood" but the individual petitioners (including the Stockmans[5]) did not. *See* § 444.773. The Commissioner also found, however, that Magruder met its burden of persuasion that the expanded permit, subject to certain conditions, "will not unduly impair the health, safety or livelihood of the petitioners." She recommended, therefore, that Magruder's application for permit expansion be granted with eight specific conditions.

The Commission took up the matter at its next public meeting. It voted unanimously to adopt the recommendations and findings of Commissioner Winn and to grant Magruder's permit, but it incorporated only the first five of the recommended conditions. The Commission also modified Condition 4 to make it easier to understand.

The Appellants filed a petition for judicial review, claiming that the Commission erred in failing to accept all of the hearing officer's suggested conditions, and that the Commission lacked the authority to impose any conditions that were not in Magruder's application. The circuit court rejected those arguments, stating that it had reviewed the Commission's reasons for removing Conditions 6, 7, and 8 and found no basis for rejecting the Commission's findings. The court also found that the "Commission had the authority to impose or reject conditions when issuing a permit" and affirmed the Commission's decision to grant the permit with conditions.

The Sewer Board and the Stockmans appeal.

**Standard of Review**

On appeal from the circuit court's review of an agency's decision, we review the agency's actions and not those of the circuit court. *Albanna v. State Bd. of Registration for Healing Arts,*

---

[5]The Stockmans own and operate an RV park that is approximately a mile from the proposed mine site and is serviced by the Lake Ozark/Osage Beach sewer system. Their concern is with the impact that the proposed mining activity will have on their business.

4

293 S.W.3d 423, 428 (Mo. banc 2009). Our review is limited to determining whether the agency's decision was constitutional; was within the agency's statutory authority and jurisdiction; was supported by competent and substantial evidence upon the whole record; was authorized by law; was made upon lawful procedure with a fair trial; was not arbitrary, capricious or unreasonable; and was a proper exercise of discretion. *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004); § 536.140.2. In reviewing the agency's decision, we must consider the entire record and not simply the evidence that supports the agency's decision. *Coffer v. Wasson-Hunt*, 281 S.W.3d 308, 310 (Mo. banc 2009). "If the evidence permits either of two opposing findings, deference is afforded to the administrative decision." *Id.* We review questions of law *de novo. Saxony*, 404 S.W.3d at 906.

**Point I**

The Appellants first contend that the Commission erred in granting Magruder's permit because the Commissioner's Order is not supported by competent and substantial evidence and is arbitrary and capricious, in that the Commission removed Conditions 6, 7, and 8, which Commissioner Winn deemed necessary to the grant of the permit.

Section 444.773.3 of the Act provides that, where the Director recommends issuing a permit, a formal hearing may be held upon a timely petition from "any person whose health, safety or livelihood will be unduly impaired by the issuance of this permit." *Lake Ozark/Osage Beach*, 326 S.W.3d at 43. Following the formal hearing, if the Commission finds, "based on competent and substantial scientific evidence on the record, that an interested party's health, safety or livelihood will be unduly impaired by the issuance of the permit," then the Commission may deny the permit application. § 444.773.4; 10 C.S.R. 40-10.080(3)(D). At least four of the Commission members must approve any "final action by the commission." § 444.787.4.

5

Pursuant to section 444.789.3, the Commission may designate a hearing officer to hold a hearing and make recommendations to the Commission. Here, the Commission designated Commissioner Winn to do so. In the course of the hearing, the Commissioner accepted portions of the evidence from the 2008 hearing that the parties designated and heard additional testimony. As noted, the Commissioner ultimately found that the Sewer Board "met its burden of production" but that the individual petitioners did not. The Commissioner also found, however, "that Magruder met its burden of persuasion."[6] She recommended that Magruder's application for permit expansion be granted subject to these Conditions:

1) Magruder must adhere to its blast plan. . . . Any significant alterations to the blast plan should be filed with the LRC and a copy provided to the Sewer Board. If smaller blast, smaller holes or lesser bench height is warranted because of concerns about safety or proximity to the sewer system, such "downward departures" should be allowed without notice.

2) The conditions set forth in the blast plan shall apply to the entire 205-acre mine plan.

3) Blasting shall be confined to weekdays between 8:00 a.m. and 5:00 p.m. Magruder shall notify sewer plant staff prior to each blast. The Sewer Board shall provide the name of the appropriate contact person to [Magruder].

4) The elevation of the mine floor at the quarry shall be maintained above the sewer lines to reduce the possibility of ground shifting or block movement in the pipeline area from blasting.

5) Magruder shall not stockpile rock on or within 150 feet of the sewer line easement.

6) Trucks or other heavy equipment shall not travel over the sewer line easement. If that necessity arises, Magruder shall consult with the Sewer Board and the City of Osage Beach to engineer and build a safe crossing over the sewer lines.

7) Magruder shall employ the best available technology for dust suppression and control.

---

[6]As explained in *Lake Ozark/Osage Beach*, 326 S.W.3d at 43, the burden of proof for parties before the Commission is set forth in 10 C.S.R. 40-10.080(3)(B), which provides that "[t]he burden of *establishing an issue of fact* regarding the impact, if any, of the permitted activity on a hearing petitioner's health, safety or livelihood shall be on that petitioner by competent and substantial scientific evidence on the record," and "[o]nce such issues of fact have been established, the burden of *proof* for those issues is upon the applicant for the permit." (Emphasis added.)

6

8) If the Sewer Board documents a correlation between blasting at the quarry site and disruption to [its] UV [ultraviolet treatment] system, Magruder shall pay the cost of repairs and shall adjust its blasts to eliminate or minimize any such disruption.

At the Commission's next public meeting, a member of the Land Reclamation Program Staff presented the Staff's recommendations for modifications to the conditions recommended by Commissioner Winn. The Staff's recommendations pertinent to this appeal are as follows:

4. Condition 4 was modified slightly from the original recommendation staff had prepared and placed in the packets for the meeting, and was altered to match the original recommendation of Hearing Officer Tichenor, from the first hearing. The condition deals with the elevation of the mine floor. The elevation of the floor of the mine (quarry) shall run at or above the grade of the City of Osage Beach's sewer line easement as it crosses the Magruder property, so that no blasting holes will be drilled to a depth that would be below the elevation of that grade. Permittee shall submit an annual report prepared by a Missouri registered Professional Engineer to verify compliance with this requirement.

***Justification for the above modification is that the proposed language is easier to understand for all parties and meets the intent of the Administrative Hearing Commission's recommendation.***
. . . .

6. Trucks or other heavy equipment shall not travel over the sewer easement line. If that necessity arises, Magruder shall consult with the Sewer Board and the City of Osage Beach to engineer and build a safe crossing over the sewer line.

***Staff recommendation is not to include this as a condition of the permit because this condition is between the company and the Sewer Board.***

7. Magruder shall employ the best available technology for dust suppression and control.

***Staff recommendation is not to include this as a condition of the permit because this activity will be regulated and enforceable under the Missouri Clean Air Conservation Law.***

8. If the Sewer Board documents a correlation between blasting at the quarry site and disruption to the UV system, Magruder shall pay the cost of repairs and shall adjust its blasts to eliminate or minimize such disruption.

***Staff recommendation is not to include this as a condition of the permit because it's not feasible for Land Reclamation Program staff to make a determination as to a cause of UV system disruption and nearly impossible to enforce***.

Following the Staff recommendations, each side was allowed five minutes to address the Commission. One of the Commissioners then moved "to adopt the findings of the hearing officer with the changes presented by staff and the further change for Condition 4 to include the words 'at the surface' following 'the Magruder property.'" Another Commissioner seconded the motion, and a third Commissioner commented "that these conditions narrowed the aspects to the things that are under the jurisdiction of the Land Reclamation Program while other issues are enforced in different ways but they are addressed."

The Commission voted unanimously to adopt the recommendations and findings of Commissioner Winn and to grant Magruder's permit. Pursuant to Staff recommendations, the Commission rejected Conditions 6, 7, and 8. The Commission also modified Condition 4 to make it easier to understand. In a letter dated January 13, 2014, the Commission issued "formal notice" of its decision, stating that it had adopted the Commissioner's recommended decision, including the permit conditions *as modified* by the Commission.

The evidence supported the Commission's decision to incorporate these modifications. As to Condition 6, Magruder's representative testified at the formal hearing that Magruder would use a conveyor system to transport material at the mine and would engineer and build a proper crossing if it needs to use trucks to convey the material over the sewer lines. The Commission, as the finder of fact, was free to believe this testimony, *Dierks v. Kraft Foods*, 471 S.W.3d 726, 737 (Mo. App. 2015), and to conclude from it that Condition 6 was unnecessary and that engineering a crossing, if needed, is "between [Magruder] and the Sewer Board."

As to Condition 7, requiring Magruder to "employ the best available technology for dust suppression," the Staff pointed out that it was unnecessary because Magruder is subject to Missouri's Clean Air Conservation Law dust emission limits. §§ 643.010-.620.

In rejecting Condition 8, requiring Magruder to pay for repairs if Magruder's blasting causes a disruption of the UV system, the Staff noted that it would be "nearly impossible to enforce," in that it would not be "feasible" for the Staff to determine the cause of a UV system disruption. Moreover, the evidence showed that the treatment plant's alert system recently had been upgraded so that personnel are notified within 90 seconds of any failure in the UV system; that resetting the system takes about five minutes; that if the UV system is offline only for a few minutes, the quality of the plant's effluent will not be impaired; and that Condition 3 requires Magruder to provide advance notice of blasting, after which plant personnel can inspect the UV system. In light of all this, it is not surprising that the Commission determined that Condition 8 was not needed.

Finally, the decision to modify Condition 4 was based on the Staff's advice that the new language would make the provision more understandable.[7]

The Appellants contend that the Commission's decision to accept Commissioner Winn's recommendation to grant the permit while modifying her suggested conditions was "outside the Commission's authority" and thus "arbitrary and capricious." This argument, which suggests that the Commission was bound by the Commissioner's recommendations, is without merit.

As noted, the Commission may designate a hearing officer to conduct a hearing and make recommendations to the Commission. § 444.789.3. Those recommendations have no binding effect, however, because the Commission "shall make the final decision" on a permit application, and all Commission members participating in the decision must "review the record before making the decision." *See id*. The Act clearly leaves the decision to grant or deny the permit

---

[7]As modified, Condition 4 stated:

The elevation of the floor of the mine (quarry) shall run at or above the grade of the City of Osage Beach's sewer line easement as it crosses the Magruder property at the surface, so that no blasting holes will be drilled to a depth that would be below the elevation of that grade.

9

"solely to the discretion of the Commission," which "retains the ultimate authority" to make the decision following the public hearing. *Saxony*, 404 S.W.3d at 908, 911 (citing § 444.773.1-2 & § 444.789.3).

The Appellants' suggestion that the Commission must either accept or reject the Recommended Decision in its entirety is simply incorrect. The legislature gave the Commission, not the hearing officer, the power to "examine and pass on" mining-permit applications. *See* § 444.767(3). Accordingly, the Commission acted within its statutory authority in determining whether or not to adopt any of the hearing officer's conditions.

The Appellants clarify in their reply brief that they are *not* claiming that the Commission does not have the authority to make its own decision on the merits or modify recommendations. Rather, they are arguing that if the Commission *does* modify the recommendations, it must issue its own findings of fact and conclusions of law. Specifically, they contend that Magruder

> eliminates the requirement that the [Commission] make "findings" to support its decision. *See* RSMo. 444.773 (If the commission changes or modifies the decision recommended by the administrative hearing officer, it shall issue its own decision, which shall include findings of fact and conclusions of law).

The Appellants assert, in other words, that the Commission may not grant the permit and then reject some of the required conditions, but must reject some or all of the factual findings and then make its own findings. Absent new findings, they argue, "the decision to grant a permit was arbitrary and capricious."

This claim, however, also is without merit. The portion of section 444.773 on which the Appellants rely was not in effect at the time of the Commission's decision here. That provision was first added to section 444.773 in 2014. Here, the Commission issued its final decision letter

on January 13, 2014 (seven months prior to the new provision's effective date).[8]  At that time, the Commission was not statutorily required to issue its own decision with findings of fact and conclusions of law if it changed or modified the recommended decision.  *See* § 444.773, RSMo, Cum. Supp. 2013.

In addition, the Appellants fail to show how they were prejudiced by the Commission's failure to issue findings of fact and conclusions of law.  "Only prejudicial error is reversible error."  *Saxony*, 404 S.W.3d at 912.  Here, the Commission's formal notice of its decision, with attached minutes from the hearing on the Recommended Decision, explained the Staff's reasoning for its recommended modifications, which the Commission adopted.

We also disagree with the Appellants' (rather convoluted) claim that the Commission's decision to eliminate some of the recommended conditions somehow rendered the entire decision unsupported by competent and substantial evidence.  Our review of the record reveals that the Commission's decision was "supported by competent and substantial evidence upon the whole record."  *See* § 536.140.2; *Coffer*, 281 S.W.3d at 310.

Finally, to the extent that the Appellants argue that the Commission was required to adopt all eight of the suggested conditions in order for Magruder to satisfy its burden of proof, we again disagree.[9]  As discussed above, the hearing officer is not the ultimate decision maker on mining permits; that role is the Commission's alone.  *Saxony*, 404 S.W.3d at 908-09; § 444.767.

---

[8]*See* L.2014, H.B. No. 1201, § A, eff. Aug. 28, 2014; L.2014, S.B. No. 642, § A, eff. Aug. 28, 2014.  As amended, § 444.773.2, RSMo, Cum. Supp. 2015, now provides:

> The commission shall issue its own decision, based on the appeal, for permit issuance, denial, suspension, or revocation. ***If the commission changes a finding of fact or conclusion of law made by the administrative hearing commission, or modifies or vacates the decision recommended by the administrative hearing commission, it shall issue its own decision, which shall include findings of fact and conclusions of law***.  [Emphasis added.]

[9]We also reject the Appellants' complaint that the language added to Condition 4 came directly from the 2008 decision which incorrectly applied the burden of proof.  They do not show that this specific language was in any way defective, and the evidence shows that the language was employed solely to make Condition 4 easier to understand.  The Commission did not err in employing the clearest, most effective language, regardless of its origin.

Here, the Commission ultimately decided, based on the evidence, that Magruder met its burden of proof even without three of the conditions proposed by the hearing officer. We find no error in that decision. Point I is denied.

## Point II

The Appellants next argue that the Commission erred in granting Magruder's permit because its Order is made "upon unlawful procedure and without a fair trial," in that Commissioner Winn's act of *sua sponte* adding conditions to the permit carried the burden of proof for Magruder. As the Commission appoints a hearing officer only for the limited purpose of conducting a hearing and making recommendations, the issue is whether the *Commission* has authority to attach conditions to a permit. §§ 444.767(3) & .765(4); *see also* § 536.140.2 (allowing judicial inquiry into whether the agency's action was in excess of its authority).

We find that the Commission does have such authority. We note, first, that section 444.773 was amended in 2014 to include language explicitly permitting the Director to impose conditions. The revised version of the statute now states: "In issuing a permit, the director may impose reasonable conditions consistent with the provisions of sections 444.760 to 444.790." § 444.773.1, RSMo, Cum. Supp. 2015. The Commission decided this case prior to the addition of that sentence, however; thus, we look to the case law to assist with the interpretation of the Act as it existed at the time.

In *Saxony*, the Southern District of this Court determined that the Commission had the authority to impose a condition on a permit to operate a limestone mine before it approved the application. 404 S.W.3d at 906-11. While the quarry's application was pending in that case, a newly enacted law took effect requiring a 1,000-foot buffer between a mining area and a school. *Id.* at 905. The quarry's application had specified a 55-foot buffer. *Id.* The school tried to stop

12

the public hearing and to strike the application after the law passed. *Id*. The applicant responded by offering to revise the plan to reflect a boundary at least 1,000 feet from the school. *Id*. As in this case, the school argued that the Commission lacked the authority to impose conditions on the approval of a permit, but, rather, had authority only to approve or deny the application *as filed*. *Id*. The hearing officer recommended granting the permit subject to the revision, however, and the Commission adopted the recommendation. *Id*. Following review in the circuit court, which vacated the decision, the appeals court upheld the Commission's decision. *Id*. at 905, 911.

In examining section 444.767(3), which grants the Commission the power to "[e]xamine and pass on all applications," the *Saxony* Court reasoned that the plain meaning of *pass* "suggests the Commission is empowered to consider the evidence in front of it and render its decision." *Id*. at 909. It further noted that, by stating that the Act's purpose is to "strike a balance" between the various interests, the legislature intended for "the Commission [to] exercise [its] judgment and craft a decision that would balance those interests." *Id*. To read the Act to "suggest [that] the Commission's role is limited essentially to just checking one of two boxes on a form," the Court stated, "would limit the Commission's ability to balance and resolve [the relevant] concerns" and would disregard the plain meaning of "pass on" in the Act. *Id*.

Citing other Department of Natural Resources agencies which have provisions for issuing conditional permits, the *Saxony* Court stated, "we have no reason to believe [that] the legislature intended [the Commission] to be the only permit-granting entity without power to impose conditions on such permits during the process." *Id*. at 910. The Court held that "the only logical conclusion is that the Commission's power to 'pass on' applications under the Act includes the ability to conditionally approve permit applications in ways that align with the Act and fulfill the Commission's purpose to balance interests" of operators and the public. *Id.* at 911.

13

The Court also noted that section 444.787.2 of the Act empowers the Director to eliminate "violation[s] of any provision of [the Act] or any rule or regulation . . . or any *condition imposed on the permit*." *Id.* at 909-10. The Court also opined that the Act must be read in conjunction with the Surface Coal Mining Law, which expressly allows the Director and the Commission to modify a permit application as an alternative to outright denial. *Id.* at 910.

The *Saxony* Court concluded, in light of the foregoing, "that the Commission had the authority to approve [the] permit subject to the condition that [the applicant] relocate its mine plan boundary." *Id.* at 912. Although the *Saxony* Court at times framed the issue more narrowly, nothing in its reasoning is limited to the specific circumstances of that case; rather, its reasoning necessarily decides the broader question of whether the Commission has the authority to attach conditions generally.[10]

In light of the compelling reasoning in *Saxony*, we conclude that the Commission had the authority to impose conditions on Magruder's permit at that time. We also believe that the 2014 revision of the statute to now specifically authorize the Director to impose conditions on a permit supports this. Consequently, Point II also is denied.

### Conclusion

Based on the foregoing, we affirm the circuit court's judgment which upheld the Commission's decision to grant Magruder its permit subject to the conditions cited.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge


All concur.

_____

[10]The Appellants' claim that adding conditions deprived them of the opportunity to present evidence regarding their impact is refuted by the fact that most of the conditions appear in Magruder's blasting plan, and they were, in fact, discussed at the hearing.

14