

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

MARIANN ATWELL, et al., )
                       )
            **Respondents,** )
                       )     **WD77100**
**v.** )
                       )     **OPINION FILED:**
                       )     **October 21, 2014**
**JAMES FITZSIMMONS,** )
                       )
            **Appellant.** )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division I:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

This appeal reveals the problem with the Administrative Hearing Commission—in the context of administrative proceedings conducted *outside* the purview of the Labor and Industrial Relations Commission's authority under Chapter 287, RSMo—usurping the exclusive statutory authority of the administrative tribunals of the Labor and Industrial Relations Commission to determine whether an employee's injury shall be deemed to have arisen out of and in the course of employment with the employer and, if so, to what relief the injured employee is entitled.

Mariann Atwell ("Atwell"), the Director and Appointing Authority[1] of the Division of Offender Rehabilitation Services within the Missouri Department of Corrections (collectively "MDOC"), dismissed James D. Fitzsimmons ("Fitzsimmons") from his merit system position. Fitzsimmons appealed his dismissal to the Administrative Hearing Commission ("AHC"), which found that Atwell did not have cause to dismiss Fitzsimmons and ordered the MDOC to accommodate Fitzsimmons's injuries during recuperation and to reinstate Fitzsimmons to an alternative duty assignment during recuperation. Atwell and the MDOC petitioned the Circuit Court of Cole County, Missouri, to review the AHC's decision. The circuit court reversed the AHC's decision, and Fitzsimmons appealed.[2]

Atwell and the MDOC raise multiple points on appeal, arguing in the alternative that the AHC's decision that Fitzsimmons should be reinstated was not supported by competent and substantial evidence upon the whole record, was arbitrary and unreasonable, was in excess of statutory authority, and was a misapplication of the law. Because the AHC erroneously usurped the exclusive role and function of the Labor and Industrial Relations Commission, we conclude that the AHC's decision is unauthorized by law and unsupported by competent and substantial evidence; thus, we affirm the circuit court's judgment reversing and remanding the AHC's decision.

---

[1] "Appointing authority" is defined as "an officer or agency subject to [Chapter 36—State Personnel Law (Merit System)] having power to make appointments." § 36.020(2). Atwell, as the Appointing Authority of the Division of Offender Rehabilitation Services, was responsible for oversight of the Division, including determining and issuing employee discipline.

[2] Although Fitzsimmons filed this appeal as the party aggrieved by the circuit court's decision, Atwell and the Division filed the appellant's brief under Rule 84.05(e) because they were aggrieved by the AHC's decision. In an appeal from a judgment of a trial court addressing the decision of an administrative agency, this court reviews the decision of the administrative agency and not the judgment of the trial court. *Bird v. Mo. Bd. of Architects*, 259 S.W.3d 516, 520 n.7 (Mo. banc 2008). However, in our mandate, we reverse, affirm, or otherwise act upon the judgment of the trial court. *Id. See* Rule 84.14.

**Factual and Procedural Background**[3]

Fitzsimmons was employed on October 20, 2008, as a tractor trailer truck driver by the MDOC. By all accounts, Fitzsimmons was an exceptionally good employee.

On February 16, 2011, Fitzsimmons was assigned to make a round trip from Jefferson City, Missouri, to Cameron, Missouri. He stopped at a truck stop in Macon, Missouri, to go to the bathroom, throw away trash, and get a cup of coffee. As Fitzsimmons was getting out of his truck, he slipped on an icy lower step, landed hard on his foot as he slipped and fell on the ground twice, and fractured his ankle in four places.

Fitzsimmons's ankle swelled immediately, but he finished his route and continued to work until he started feeling pain in his ankle four to six weeks later and went to a doctor. The last day he physically worked as a truck driver for the MDOC was March 25, 2011.

Fitzsimmons asserted a claim for workers' compensation benefits with the Risk Management Section of the State Office of Administration as a result of his February 16, 2011 injury. The Central Accident Reporting Office ("CARO")[4] reviews workers' compensation claims on behalf of state agency employers and represents the interests of state agency employers in disputed claims of compensation under Missouri's Workers' Compensation Act codified in Chapter 287 of the Missouri Revised Statutes. CARO denied that Fitzsimmons's injury arose out of and in the course of his employment with the MDOC. Fitzsimmons filed a formal workers' compensation claim with the Division of Workers' Compensation, and that claim is still pending.

---

[3] On appeal following judicial review of an agency's decision, we look to the whole record, not merely at that evidence that supports the agency's decision; we no longer view the evidence in the light most favorable to the agency's decision. *Henry v. Mo. Dep't of Mental Health*, 351 S.W.3d 707, 712 (Mo. App. W.D. 2011).

[4] As a self-insurer, the State administers its workers' compensation program through CARO (Central Accident Reporting Office), a division of the Office of Administration that oversees compensability and payment of workers' compensation claims and directs medical care. If an employee's questions or concerns cannot be resolved by CARO, the employee may file a Claim for Compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, and have the claim heard by an administrative law judge.

The MDOC operates under one set of policies when an employee's injury arises out of and in the course of employment and another when the injury does not so arise. Under the former, the policy—titled "Employee Injury/Workers' Compensation" and expressly incorporating "Chapter 287 RSMo" ("the MDOC Work Comp Policy")—attempts to accommodate injured employees by finding temporary alternative duties matching the doctor-prescribed physical limitations while the employee is recuperating from injury. Under the latter, an employee may exercise his right to paid leave, rights guaranteed under the Family and Medical Leave Act ("FMLA"), and to seek leave without pay. However, at such time as an employee fails to report to work for three consecutive work days without employer authorization, the employee is subject to discipline. Here, Fitzsimmons and the MDOC operated under the authorized/unauthorized absence policy.

All of Fitzsimmons's paid leave was exhausted on June 1, 2011, and his FMLA leave expired on June 17, 2011. Fitzsimmons requested an extension of medical leave without pay until his doctor released him to return to work. Atwell, as the Appointing Authority, approved Fitzsimmons's request for leave without pay through July 31, 2011. Atwell later extended the date to August 5, 2011. She requested that Fitzsimmons have his physician review the Essential Functions of a Tractor Trailer Driver and complete the Intent to Return and Fitness for Duty/Medical Release FMLA form so that she could better assess the possibility of Fitzsimmons returning to work. The relevant physical portions of the essential functions of a tractor trailer driver were:

- The need to be able to lift, move and stack heavy objects daily.

- The need to be able to climb in and out of the truck and/or trailer multiple times every day. This requires climbing up and down three steep steps.

4

- Due to the nature of the job, sitting in the truck or standing on concrete for an extended amount of time could be required.

On July 12, 2011, Fitzsimmons's physician opined that Fitzsimmons was unable to perform the essential functions of his position as a tractor trailer driver. Addressing Fitzsimmons's performance limitations, his physician noted that Fitzsimmons "is currently non-weight-bearing and using a roll-about to aide in ambulation. He is unable to walk, run, stoop, climb, or bend. He is being re-evaluated about every two weeks with xrays to check healing progress. Patient may be able to return to his position in Oct." Thereafter, in August 2011, Fitzsimmons's physician modified the restrictions, but of note, the restrictions were not such that Fitzsimmons could get in and out of a tractor trailer truck and drive the truck to delivery locations.

Fitzsimmons did not return to work after August 5, 2011, and his absences were then considered unauthorized. Approximately one month later, Fitzsimmons was notified that, effective September 15, 2011, he was dismissed from his employment without prejudice.[5] In pertinent part, Fitzsimmons was dismissed due to excessive unauthorized absences.

Fitzsimmons appealed his dismissal to the AHC.

After a hearing, the AHC concluded that Fitzsimmons's injuries were work related as contemplated by the MDOC Work Comp Policy, that the policies applied by Atwell were only applicable for injuries that were not work related, and that the MDOC should adhere to the MDOC Work Comp Policy. The AHC ordered the MDOC to reinstate Fitzsimmons to a temporary alternative duty position until he recuperated from his injuries and was able to perform the full duties of a tractor trailer truck driver.

---

[5] A dismissal without prejudice allowed Fitzsimmons to be rehired by the MDOC.

Atwell and the MDOC petitioned the circuit court for judicial review of the AHC's decision. The circuit court reversed and remanded the matter, finding that the AHC's decision was arbitrary, unlawful, unreasonable, and was not supported by substantial and competent evidence on the record as a whole.

Fitzsimmons timely appealed.

## Standard of Review

"On an appeal from the trial court's review of an AHC decision, we review the decision of the AHC, not the judgment of the trial court." *Dep't of Soc. Servs. v. Peace of Mind Adult Day Care Ctr.*, 377 S.W.3d 631, 637 (Mo. App. W.D. 2012). "'The AHC's decision will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions.'" *Id*. (quoting *Beverly Enters.-Mo. Inc. v. Dep't of Soc. Servs.*, 349 S.W.3d 337, 351 (Mo. App. W.D. 2009)). "We review the AHC's conclusions on the interpretation and application of the law[, however,] *de novo*." *Id*.

## Analysis

Because the points relied upon by Atwell and the MDOC are interrelated, we discuss them together.

"The AHC is a creature of statute and has only such . . . authority as may be granted by the legislature." *Mo. Dep't of Soc. Servs., Div. of Med. Servs. v. NME Hosp., Inc.*, 11 S.W.3d 776, 779 (Mo. App. W.D. 1999) (internal quotation omitted). When reviewing the dismissal of an employee with merit status, the AHC may make any one of the following appropriate orders:

| (1) | Order the reinstatement of the employee to the employee's former position;[6] |
|---|---|
| (2) | Sustain the dismissal of such employee; |
| (3) | Except as provided in subdivisions (1) and (2) of this subsection, the administrative hearing commission may sustain the dismissal, but may order the director of personnel to recognize reemployment rights for the dismissed employee pursuant to section 36.240, in an appropriate class or classes, or may take steps to effect the transfer of such employee to an appropriate position in the same or another division of service. |

§ 621.075.2.[7] Here, the AHC did none of the above, choosing instead to craft an order that required the MDOC to reinstate Fitzsimmons, but to a temporary alternative duty assignment until his injuries healed. Though administrative tribunals within the statutory framework of the Labor and Industrial Relations Commission possess the statutory authority to make temporary awards of this nature, the AHC does not possess such authority.

The Labor and Industrial Relations Commission is "an administrative tribunal with authority to determine questions of fact and to apply provisions of law under the workers' compensation act." *Banks v. Zweifel*, 298 S.W.3d 869, 870 (Mo. banc 2009). The workers' compensation statutes expressly provide that section 287.020.3(2) controls the determination of whether an employee's injury shall be deemed to have arisen out of and in the course of employment. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012). An employee's injury is deemed to arise out of and in the course of employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

---

[6] Under this option, reinstatement to a "former position" requires an employee "to be restored to his former job class with the same title, qualifications, duties, responsibilities[,] and pay rate." *Riley v. Wheat*, 861 S.W.2d 739, 741 (Mo. App. W.D. 1993).

[7] All statutory references are to the Revised Statutes of Missouri 2000 as supplemented, unless otherwise indicated.

§ 287.020.3(2). These statutory provisions must be strictly construed. *State ex rel. KCP&L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 38 (Mo. App. W.D. 2011) (Welsh, J., dissenting). A determination of whether there was an accident arising out of and in the course of employment involves "administrative expertise, technical factual situations[,] and regulatory systems in which uniformity of administration is essential." *Cooper v. Chrysler Group, LLC*, 361 S.W.3d 60, 63-64 (Mo. App. E.D. 2011) (internal quotation omitted). "[T]he [Labor and Industrial Relations C]ommission has expertise in determining whether the accident arose out of and in the course of the [employee's] employment and, thus, that factual issue is left to it in the first instance." *Harris v. Westin Mgmt. Co. E.*, 230 S.W.3d 1, 3 (Mo. banc 2007). The Labor and Industrial Relations Commission "has exclusive jurisdiction in the first instance as to matters covered by the Workers' Compensation Act." *State ex rel. Tri-Cnty. Elec. Co-op. Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. banc 2006) (internal quotation omitted).[8]

Aside from occupying the exclusive role of determining whether an employee's accidental injury arose out of and in the course of employment, Chapter 287 RSMo also authorizes administrative tribunals within the Labor and Industrial Commission to award medical and rehabilitative services to employees (§ 287.140), temporary total disability benefits (§ 287.170) or temporary partial disability benefits (§ 287.180) throughout the rehabilitative process (§ 287.149.1), and even to make temporary awards of compensation with the threat of sanction where employers have refused to pay medical or temporary disability compensation or both to employees injured out of and in the course of employment with employer (§ 287.510). Furthermore, "[t]he plain language of section 287.780 prohibits an employer from discharging or

---

[8] Section 287.120.2, often referred to as the "exclusivity provision" of the Workers' Compensation Act, states: "The rights and remedies herein granted [under the Workers' Compensation Act] to an employee shall exclude all other rights and remedies of the employee . . . , at common law or otherwise, on account of such injury [arising out of and in the course of employee's employment]. . . ."

8

in any way discriminating against an employee for exercising his or her workers' compensation rights." *Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014) (emphasis omitted).[9]

In sum, it is no coincidence that Fitzsimmons has filed a workers' compensation claim. The relief he has sought from the AHC in the instant case is available to him properly *and exclusively* through the statutory authority of administrative tribunals created by Chapter 287 of the Missouri Revised Statutes. Were we to permit the AHC to make section 287.020.3(2) determinations or to grant an injured employee "temporary disability benefits" that are contemplated by section 287.510, we would be ignoring section 287.120.2, and we would be promoting a lack of uniformity in the administration of Chapter 287 of the Missouri Revised Statutes.[10]

Instead, where an injured merit system state employee alleges that he is entitled to an award of relief or compensation directly related to an accidental injury that arose out of and in the course of the employee's employment, the employee's *exclusive* forum for that claim is with the administrative tribunals operating within the purview of the Labor and Industrial Relations Commission. Conversely, where a merit system state employee is terminated from employment for reasons unrelated to an injury that arose out of and in the course of employment, that employee's forum for relief is with the AHC. That is precisely the point of Atwell and the

[9] Clearly, then, while an employer is entitled to assert its position that an injury occurring at work is not compensable under the Workers' Compensation statutes, there are risks attendant with taking such a position. The administrative tribunals established by the Workers' Compensation statutes are vested with much discretion in fashioning appropriate remedies for employees (including sanctions against employers in certain circumstances) who are wrongfully denied Workers' Compensation benefits—or even terminated—when, in fact, the employee is ultimately determined to have sustained such injury arising out of and in the course of employment with the employer. Our ruling today does not leave Fitzsimmons without recourse should he prevail in his pending workers' compensation claim against MDOC.

[10] In fact, at oral argument, counsel for Fitzsimmons went so far as to suggest that the AHC's ruling that Fitzsimmons's injury arose out of and in the course and scope of employment would collaterally estop the Labor and Industrial Relations Commission from ruling to the contrary in Fitzsimmons's corresponding Chapter 287 workers' compensation claim. This is precisely the problem with permitting the wrong administrative tribunal to encroach upon the exclusive statutory authority granted to a different administrative tribunal.

MDOC. With regard to Fitzsimmons's pending workers' compensation claim, if the Labor and Industrial Relations Commission (or related appellate court) concludes that Fitzsimmons's injury arose out of and in the course of his employment with the MDOC, the MDOC will be obligated to provide Chapter 287 compensation and relief. Here, though, Atwell and the MDOC correctly argue that the appellate review authority of the AHC was limited to reviewing the MDOC's termination decision under the lens of an unauthorized absence policy related to *non-work related* injuries.[11] In failing to address the MDOC's conduct under the appropriate review lens, the AHC's resulting decision was not supported by competent and substantial evidence upon the whole record.

Chapter 36 is the "State Personnel Law (Merit System)," which establishes a system of personnel administration based on merit principles for designated State departments, including the MDOC. § 36.030.1. The MDOC operates the subsidiary division that employed Fitzsimmons, rendering Fitzsimmons a merit employee. Pursuant to section 36.380, "[a]n appointing authority may dismiss *for cause* any employee in his division occupying a position subject hereto when he considers that such action is required in the interests of efficient administration and that the *good of the service* will be served thereby." (Emphasis added.)

Thus, section 36.380 provides that, in order to terminate a merit employee, an appointing authority must first have *cause* to do so. *Bowen v. Mo. Dep't of Conservation*, 46 S.W.3d 1, 10 (Mo. App. W.D. 2001). "The statute then provides a second tier of inquiry for the appointing authority, stating that before deciding to dismiss the merit employee for cause, the appointing

---

[11] It is undisputed that Atwell and the MDOC challenged the authority of the AHC to decide issues related to whether Fitzsimmons's injury arose out of and in the course of employment. To the extent that the AHC believed that the "work place injury" issue was dispositive as to matters then pending before the AHC, the AHC could have stayed its proceedings pending resolution of that issue (including any related appeal to a reviewing court) before the administrative tribunal possessing the exclusive statutory authority to decide such issue—the Labor and Industrial Relations Commission.

authorities must consider whether dismissal is in the interests of efficient administration *and* whether 'the *good of the service* will be served thereby.'" *Id.* (quoting § 36.380). "Section 36.380 thus requires 'cause' to be demonstrated in every case. However, cause alone will not support termination of a merit employee unless termination is also for the good of the service." *Mo. Veterans Home v. Brown*, 374 S.W.3d 359, 366 (Mo. App. W.D. 2012).

As a regular employee under the state merit system, Fitzsimmons could only be dismissed "for cause," which means "legal cause." *Prenger v. Moody*, 845 S.W.2d 68, 77 (Mo. App. W.D. 1992). "It must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public." *Id.* (internal quotation omitted). 1 CSR 20-3.070(2) contains a non-exhaustive list of circumstances that are sufficient to establish "cause" for dismissal. *Black v. Lombardi*, 970 S.W.2d 378, 381 (Mo. App. E.D. 1998). Subsection F permits dismissal for cause where a merit employee "[h]as been habitually tardy in reporting for duty or has absented him/herself frequently from duty during the course of regular working hours; or has been completely absent from duty without prior or subsequent authorization for that absence[.]" 1 CSR 20-3.070(2)(F). "Inherent in such regulation is the predetermination . . . that such conduct, when serious enough, requires termination in the interests of efficient administration." *Prenger*, 845 S.W.2d at 75-76. Under 1 CSR 20-3.070(7), "[a]n employee who absents him/herself from duty without prior authorization . . . may be subject to appropriate discipline as provided in these rules[.]" Furthermore:

> If an employee requests a leave of absence without pay under these rules and the appointing authority does not find it practicable to grant leave under its normal policy in those cases, a continuing absence from duty without leave after the denial of this request will require the separation of the employee. If the employee, after being so notified, does not elect to submit a voluntary resignation, the appointing authority may separate the employee by dismissal as provided in

11

these rules. However, dismissals shall be without prejudice unless also based on other causes reflecting discredit on the character or conduct of the employee. If the director determines that the dismissal does not reflect discredit on the character or conduct of the employee, s/he shall approve reemployment eligibility in an appropriate class or classes for the employee so dismissed.

§ 1 CSR 20-3.070(7)(C).

Atwell determined that cause existed to dismiss Fitzsimmons based upon his violation of MDOC policies regarding unauthorized absences. "The burden of proof is on the employing agency to establish grounds for dismissal." *Mo. Veterans' Comm'n v. Vanderhook*, 290 S.W.3d 115, 119 (Mo. App. W.D. 2009). The evidence on the whole record supports Atwell's determination. While the evidence reflects that Atwell may have been perplexed about CARO's advice to the MDOC that Fitzsimmons's injury did not arise out of and in the course of his employment with the MDOC, it cannot be suggested that Atwell (1) unreasonably relied upon CARO's advice, (2) treated Fitzsimmons's injury as *not* work related, and (3) adhered to policies relating to unauthorized absences from work by Fitzsimmons. Frankly, the legal issue that CARO asserted in denial of Fitzsimmons's workers' compensation claim involves an issue of first impression that this court is presently reviewing in a different case[12] and which has not been resolved as of the date of today's ruling in the present case.

In September of 2011, it had been approximately six months since Fitzsimmons had performed the duties of his job as a tractor trailer truck driver for the MDOC and one month since the MDOC had notified Fitzsimmons that no further unexcused absences would be tolerated. The MDOC had extended months of leave under the Family and Medical Leave Act,

---

[12] The issue argued by the MDOC in the workers' compensation claim is that Fitzsimmons's work was not a prevailing factor in causing his injury, but rather involved a risk to which Fitzsimmons was equally exposed to in non-employment life. Our court is presently reviewing an appeal from the Labor and Industrial Relations Commission's determination in a workers' compensation claim involving a strikingly similar set of facts and in which the same legal argument has been raised by the employer. *Young v. Boone Electric*, WD76567. Obviously, since our court has not ruled upon the issue, no precedent from our court on the topic was available to the MDOC at the time the MDOC exercised its right to deny workers' compensation benefits to Fitzsimmons.

paid leave, and unpaid leave before reaching its decision in August that no further absences could be tolerated. Though requested, at no time could Fitzsimmons produce a doctor's recommendation that he was physically able to perform all of the duties and obligations of a tractor trailer truck driver. As Atwell testified to at the hearing, Fitzsimmons's dismissal was necessary for the good of the service because "[t]he position could not be empty indefinitely." Even at that, Atwell's termination of Fitzsimmons was without prejudice, which would permit Fitzsimmons to be rehired in the future if and when he is physically able to perform the duties of the job.

Under these circumstances, the MDOC's termination of Fitzsimmons was supported by "cause," it was in the interests of efficient administration of the state agency, and the good of the service was served thereby.

Accordingly, we agree with the Circuit Court of Cole County that the AHC's Decision ordering that Fitzsimmons be reinstated into a temporary alternative job assignment that would accommodate his injuries until he had fully healed was arbitrary, unlawful, unreasonable and not supported by substantial and competent evidence on the record as a whole.

Atwell and the MDOC's points on appeal are granted.

### Conclusion

We affirm the judgment of the Circuit Court of Cole County, reversing and remanding the matter to the AHC for further proceedings consistent with this opinion.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Karen King Mitchell, Judges, concur.

13