Mark D. Pfeiffer, Judge
Ms. Sharon Hickman ("Hickman") appeals the judgment of the Circuit Court of Cole County, Missouri ("circuit court"), which reversed the decision of the Dismissal Review Committee, as adopted by the Circuit Court Budget Committee, reinstating Hickman's employment following her termination from employment with the Circuit Court of Jefferson County.
We reverse the judgment of the circuit court.[1]
Factual and Procedural Background[2]
Mr. Michael Reuter was elected Clerk of the Circuit Court of Jefferson County in November of 2014. Hickman had been a Deputy Clerk for the Circuit Court of Jefferson County in the Support Division since 2011. Prior to July 2015, all of Hickman's job performance evaluations prepared by her supervisor, Mr. Mike Bone, were favorable. Mr. Bone even commented that Hickman did her job well.
Due to the advent of e-filing, Mr. Bone's department had more employees than necessary for the workload in the Support Division. Thus, Mr. Bone recommended that Hickman be cross-trained to do other deputy clerk tasks for other divisions. Hickman was later transferred to the Traffic Division on July 1, 2015.
In the Traffic Division, Hickman was given very little training or direction for her new duties. Hickman's new supervisor was Ms. Teresa Cusick. Hickman had never seen the computer programs the department used before and was overwhelmed with learning the new tasks associated with the job. Training for Hickman within the department consisted of shadowing another employee of the department, Ms. Doris Johnson, who had become proficient at the tasks associated with the Traffic Division. It was expected that Hickman would learn by observing Ms. Johnson, asking questions of Ms. Johnson and Ms. Cusick as needed, reviewing "handbook materials" that were nothing more than a compilation of various self-made instructions assembled by various workers over time, and seeking out additional training on her own. Hickman took notes and used the internet to try to find traffic clerk training seminars. Hickman sought training videos that she hoped were relevant to her work, though no guidance was provided on which videos, *818 if any, would be helpful. Hickman initiated attempts at attending Office of State Court Administration ("OSCA") seminars to assist her in performing the tasks of a Traffic Division deputy clerk. Again, no guidance or assistance was provided to Hickman on obtaining access to these seminars.
Hickman started experiencing carpal tunnel syndrome symptoms and was prescribed prescription pain medication during her time working for the Traffic Division. Based upon a doctor's recommendation, Hickman was put on light duty, only typing for two hours in the morning and two hours immediately after lunch, from early July through her dismissal several months later.
Beginning with her performance review for July 2015, Hickman no longer received favorable performance ratings. According to the July review, Hickman was having a hard time remembering things. "Training" was noted as being "slowed down" and Hickman's work was to be reviewed by Ms. Cusick or Ms. Johnson.
The performance review for August 2015 showed Hickman was making little improvement and still having difficulty remembering. She was provided a document on phone protocol and expectations of traffic clerks. No additional direction regarding training was noted aside from direction to review notes and talk with Ms. Johnson.
Hickman later received a notice of "Corrective Action" on September 18, 2015. The notice read, in relevant part:
As your supervisor, I expect you to meet the requirements of your position on a daily basis. If you are not sure of the job requirements of your position, I suggest that you read the Employee Handbook, refer to the Court Clerk handbook or ask me specifically.... I expect the traffic cases to be processed in a timely manner[,] to be completed without error[,] and filed in a correct status order.
Hickman's September 2015 performance review was unsatisfactory and Mr. Reuter dismissed Hickman on October 13, 2015. The dismissal letter stated she was being dismissed due to "poor job performance as noted in the corrective action given to [her] on September 18, 2015, prior job performance reviews on September 30, October 5, 2015 and most recently filed by your immediate supervisor, Teresa Cusick."
Hickman requested a pre-termination hearing, in accordance with Supreme Court Operating Rule ("SCOR") 7.B.11.4(c)(4), which took place, and Mr. Reuter then affirmed his decision to terminate Hickman pursuant to SCOR 7.B.11.4(c)(5). Ms. Hickman then appealed to the Presiding Judge, Robert Wilkins, of Jefferson County, pursuant to SCOR 7.B.11.4(c)(6), who referred the appeal to the Circuit Court Budget Committee ("CCBC"), pursuant to SCOR 7.B.11.4(c)(7). The CCBC appointed a Dismissal Review Committee ("DRC") comprised of Circuit Court Judges Douglas Beach (St. Louis County), Edith R. Rutter (Reynolds County) and Scott T. Horman (Scott County) to hear the appeal. In accordance with SCOR 7.B.11.4(c)(8) and (9), following evidentiary hearings, the DRC issued its Findings of Fact and Decision, finding that Hickman's dismissal was "unreasonable and not based upon just cause" and ordering Hickman reinstated. Further findings of the DRC will be discussed below as relevant to our analysis. Mr. Reuter requested the CCBC to review the decision, pursuant to SCOR 7.B.11.4(c)(12). The CCBC accepted the decision of the DRC and noted that the administrative review process in the matter was then exhausted, in accordance with SCOR 7.B.11.4(c)(13) and (16).
*819 Mr. Reuter sought judicial review of the CCBC's final agency decision in the Cole County Circuit Court pursuant to section 536.100. The issues were briefed, oral arguments were held, and no evidence was presented. The circuit court then issued its judgment, reversing the CCBC's ruling. Hickman's appeal timely follows.[3]
Analysis
In an appeal following judicial review of an administrative agency's decision, the Court of Appeals reviews the agency's decision, not the circuit court's judgment. Ringer v. Mo. Dep't of Health & Senior Servs. , 306 S.W.3d 113, 114 (Mo. App. W.D. 2010). The presumption on appeal is that the agency decision was correct, and the burden to show otherwise is placed on the party challenging the agency decision. Id. Here, pursuant to the procedure set forth in Supreme Court Operating Rule 7.B.11.4(c)(16), the decision of the CCBC is "final" and is the decision that "exhaust[s] the administrative remedies available to the aggrieved party." As such the decision of the CCBC is the "agency decision" the appellate court reviews. Ringer , 306 S.W.3d at 114 ; MO. CONST . art. V, § 18.
Pursuant to section 536.140.2,[4] appellate review of an agency decision is to determine whether the decision:
(1) Is in violation of constitutional provisions;
(2) Is in excess of the statutory authority or jurisdiction of the agency;
(3) Is unsupported by competent and substantial evidence upon the whole record;
(4) Is, for any other reason, unauthorized by law;
(5) Is made upon unlawful procedure or without a fair trial;
(6) Is arbitrary, capricious or unreasonable;
(7) Involves an abuse of discretion.
"In reviewing the agency's decision, we must consider the entire record and not simply the evidence that supports the agency's decision." Lake Ozark-Osage Beach Joint Sewer Bd. v. Mo. Dep't Nat. Res. , 491 S.W.3d 667, 672 (Mo. App. W.D. 2016).
"If the evidence permits either of two opposing findings, deference is afforded to the administrative decision." Coffer v. Wasson-Hunt , 281 S.W.3d 308, 310 (Mo. banc 2009). This Court also defers to the agency on " 'issues involving the credibility of witnesses and the weight and value to be given to their testimony.' " Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy , 499 S.W.3d 321, 326 (Mo. App. W.D. 2016) (quoting Kerwin v. Mo. Dental Bd. , 375 S.W.3d 219, 225 (Mo. App. W.D. 2012) ). Review of the interpretation of an administrative rule or regulation, like review of statutory interpretation, is de novo. State ex rel. Evans v. Brown Builders Elec. Co. , 254 S.W.3d 31, 35 (Mo. banc 2008).
*820 "Administrative rules and regulations are interpreted under the same principles of construction as statutes." In re Trenton Farms RE, LLC v. Mo. Dep't of Nat. Res. , 504 S.W.3d 157, 164 (Mo. App. W.D. 2016) (internal quotation marks omitted). This includes interpreting the relevant sections, subsections, and words of SCOR 7.01 in context, not in isolation, construed together with cognate sections, and, if reasonably possible, in harmony with all component sections. State ex rel. Evans , 254 S.W.3d at 35. "The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." In re Trenton Farms RE, LLC , 504 S.W.3d at 164 (internal quotation marks omitted).
Here, the actions taken as to Hickman's employment, from the initial corrective action through her dismissal and the appeals thereafter by Hickman and later by Mr. Reuter, are governed by the administrative procedure set forth in SCOR 7.B Operating Procedures, pursuant to the authority delegated to the circuit clerk in section 483.245. Particularly relevant in this case are SCOR 7.B.12 - Employee Discipline and SCOR 7.B.11 - Termination of Employment. SCOR 7.01 establishes the Circuit Court Personnel System, names all its parts, including 7.01.C Personnel Policies, and states that the System "shall apply to the employees of the circuit court whose positions are funded by the State of Missouri," which includes Hickman, as a deputy circuit clerk.
An employee to whom the Supreme Court Operating Rules apply "may be dismissed only for just cause." SCOR 7.B.11.4 (emphasis added). Section 7.B.11 Termination of Employment, sets forth the various manners by which employment ends (retirement, resignation, dismissal) and the applicable procedures for each, and section 7.B.12 Employee Discipline, sets forth corrective actions and disciplinary actions and enumerates the acceptable causes and applicable procedures. It refers employees subject to a disciplinary or corrective action other than dismissal to 7.B.13 for the procedure to appeal those actions, and it dictates that employees who have been dismissed, without reference to how the dismissal was reached, "may appeal a dismissal in accordance with the procedure outline[d] in section B.11." SCOR 7.B.12.8. Thus, when read in context and harmony, any dismissal of an employee to whom the rules apply is required to be "only for just cause."[5]
Mr. Reuter argues that because his decision to dismiss Hickman was supported by competent and substantial evidence on the record as a whole, the DRC's and CCBC's decision that the dismissal was unreasonable and not based upon just cause was "arbitrary, capricious, unreasonable and involved an abuse of discretion." This argument, however, misconstrues the administrative review procedure applicable to this case, as well as the corresponding appellate standard of review. First, the decision to be analyzed is that of the CCBC, not Mr. Reuter's initial dismissal, as explained above. Further, if the evidence on the entire record "permits either of two opposing findings, deference is afforded to the administrative decision." Coffer , 281 S.W.3d at 310. Thus, even if the evidence on the whole record could support a finding that the dismissal was for just cause, if it could also reasonably support a finding that the dismissal was not *821 for just cause, we defer to the decision of the CCBC. Here, because competent and substantial evidence upon the whole record supports the CCBC's decision, we afford deference to the CCBC's decision.
In sum, the CCBC concluded that: (1) all of Hickman's job performance reviews for the years prior to her transfer to the Traffic Division were favorable; (2) Hickman's traffic clerk training was inadequate; (3) Reuter failed to consider Hickman's workplace carpal tunnel symptoms in his dismissal; and (4) Reuter's "corrective action" notification to Hickman was nothing more than a vague directive to "do your job without error" and included no specific guidance on how to achieve that objective. The record supports these findings and CCBC's corresponding conclusion that just cause did not exist for Hickman's dismissal from employment.
The CCBC correctly concluded[6] that from when she began working for the court in November of 2011 until she was transferred to the Traffic Division in July of 2015, Hickman's job performance was favorable and, frankly, complimentary. This was supported by testimony from her supervisor (Mr. Bone) and from job performance reviews for Hickman following Mr. Reuter's election. Hence, for approximately three and a half years, Hickman had performed her work responsibilities as a deputy circuit clerk in the manner expected of her and she was noted to be an employee who performed her job well.
The CCBC also correctly concluded that the record indicated that Hickman had reported carpal tunnel syndrome issues as early as May 2015 (corroborated by the testimony regarding a Workers' Compensation supervisor's statement at the evidentiary hearing before the DRC) and the appointing authority made no review or investigation of Hickman's carpal tunnel and its effects on her ability to learn the new position, aside from acknowledging the need for light duty. This finding was further supported by testimony from Mr. Reuter, who testified he had been told that Hickman may have been diagnosed with carpal tunnel syndrome, but was unaware of her medication and that she was working with a disability, and Ms. Cusick, who testified that she "had no reason to ask her [about the effects of her pain medication] because [Hickman] should divulge that if that is something that is important to her job performance." Thus, other than acknowledging the need for light duty, Mr. Reuter and Hickman's Traffic Division supervisor did not otherwise consider the consequences of her disabling injury on her ability to effectively perform the traffic clerk duties before summarily dismissing her from employment. Doing so, as the DRC and CCBC concluded, was unreasonable and without just cause.
Similarly, the CCBC correctly concluded that Hickman made sincere efforts to learn her new position, including shadowing a proficient coworker, reviewing "training" notes made by coworkers about the tasks of the job and taking her own notes, studying at home, reviewing several training videos (though she was not instructed by her superiors what training videos to review), asking questions, and attempting to enroll in a training class at OSCA on traffic clerk issues. Conversely, at no time did Mr. Reuter or his Traffic Division team make any efforts to provide an actual "How To" training manual specifically delineating the required tasks for a traffic clerk. At minimum, the CCBC correctly noted that Hickman should have been provided formal office training manuals and/or *822 the opportunity to attend formal training seminars regarding traffic clerk responsibilities instead of relying upon "self-help" as the Traffic Division's mode of "training" prior to dismissal. We agree.
Finally, SCOR 7.B.12.5 mandates that if a corrective action is imposed, the employee must be advised at a conference and in writing of "the corrective actions to be taken." The CCBC found that the corrective action letter was insufficient under SCOR 7.B.12.5 for its failure to "provide a plan or methodology by which Ms. Hickman could know what she was specifically to do to comply with the notice" or "plan on how to help her obtain that goal[,]" to "set forth a plan of action with specific goals and levels of measurable success[,]" and to provide a specific training plan. The corrective action "plan," from the record as a whole, consisted of nothing more than the contents of the letter:
As your supervisor, I expect you to meet the requirements of your position on a daily basis. If you are not sure of the job requirements of your position, I suggest that you read the Employee Handbook, refer to the Court Clerk handbook or ask me specifically.... I expect the traffic cases to be processed in a timely manner[,] to be completed without error[,] and filed in a correct status order.
Competent and substantial evidence upon the whole record supports the DRC's finding that this "plan" failed to advise Hickman of any specific "corrective actions to be taken" to avoid further corrective or disciplinary action, including dismissal, as required under the applicable SCOR.
Ultimately, based upon these findings, the CCBC concluded that Mr. Reuter's dismissal of Hickman was unreasonable and not based upon just cause, and that conclusion is supported by competent and substantial evidence upon the whole record, as enumerated above.
Conclusion
Because the decision of the CCBC is supported by competent and substantial evidence upon the whole record, we reverse the judgment of the circuit court to the contrary and reinstate the decision of the CCBC that Hickman be reinstated to her deputy circuit clerk employment for Jefferson County.
Alok Ahuja, Presiding Judge, and Thomas H. Newton, Judge, concur.

On appeal of the trial court's judgment following judicial review of an administrative agency's decision, this court reviews the decision of the administrative agency and not the judgment of the trial court. Atwell v. Fitzsimmons , 452 S.W.3d 670, 673 n.2 (Mo. App. W.D. 2014). However, in our mandate, we reverse, affirm, or otherwise act upon the trial court's judgment. Id. See Rule 84.14.

"In reviewing the agency's decision, we must consider the entire record and not simply the evidence that supports the agency's decision." Lake Ozark-Osage Beach Joint Sewer Bd. v. Mo. Dep't of Nat. Res. , 491 S.W.3d 667, 672 (Mo. App. W.D. 2016).

Rule 84.05(e) dictates that where the circuit court reverses the decision of an administrative agency, the party aggrieved by the agency decision "shall file the appellant's brief and reply brief[.]" Western District Court of Appeals Local Rule 35 indicates that, under the same procedural posture, "the Appellant shall file a statement that Respondent shall file the first brief in accordance with Rule 84.05(e)." Neither of these rules was followed in this case; however, the parties sufficiently briefed the issue, that is, whether the agency decision was "authorized by law, and ... supported by competent and substantial evidence upon the whole record." Mo. Const . art. V, § 18.

All statutory references are to the Revised Statutes of Missouri 2016, as supplemented through the 2017 Cumulative Supplement.

Not coincidentally, this was the interpretation implicit in the conclusion reached by the CCBC, which is the agency charged with administrating the rules, and as such, this interpretation is "entitled to great weight." In re Trenton Farms RE, LLC v. Mo. Dep't of Nat. Res. , 504 S.W.3d 157, 164 (Mo. App. W.D. 2016).

In choosing not to accept the matter for further review and stating that decision was the final agency decision, the CCBC adopted the DRC's findings and conclusions.