

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| PRIME HEALTHCARE<br>SERVICES-KANSAS CITY, LLC,<br>d/b/a ST. JOSEPH MEDICAL CENTER, | )<br>)<br>)<br>) | |
| Appellant, | ) | WD84723 |
| v. | )<br>) | |
| | )<br>) | OPINION FILED:<br>August 2, 2022 |
| STATE OF MISSOURI DEPARTMENT<br>OF HEALTH AND SENIOR SERVICES, | )<br>)<br>) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division One:**  Janet Sutton, Presiding Judge, and
Alok Ahuja and Karen King Mitchell, Judges

Prime Healthcare Services-Kansas City, LLC, d/b/a St. Joseph Medical Center (St. Joseph),

appeals the judgment declaring 19 C.S.R. § 30-40.430(1)(M) (the 15-mile rule) valid.[1]  St. Joseph

---

[1] The 15-mile rule states,

> There shall be no level III trauma centers designated within fifteen (15) miles of any Missouri level I
> or II trauma center.  Hospitals which have continually been level III trauma centers since January 1,
> 1989, and which are within fifteen (15) miles of a Missouri level I or II trauma center may continue
> as level III trauma centers, provided they continue to meet standards for level III trauma centers.

19 C.S.R. § 30-40.430(1)(M) (2022).  The 15-mile rule was promulgated in 1998 and has not been amended.  The
15-mile rule was promulgated pursuant to § 190.185, RSMo (1998), which directed the Department to
"promulgate . . . such . . . regulations . . . as may be designed to . . . accomplish[] . . . the purpose of th[e emergency

raises three points on appeal.[2]  First, St. Joseph challenges, as against the weight of the evidence, the trial court's finding that the 15-mile rule is not arbitrary and capricious under § 536.014,[3] arguing that the evidence did not support a 15-mile geographical restriction on designation of level III trauma centers but, instead, supported a needs-based assessment of trauma center designation that incorporates travel times.  For its second and third points, St. Joseph claims the trial court erred in finding that the 15-mile rule is not barred by article III, § 40(28) of the Missouri Constitution because there is no rational basis supporting imposition of a 15-mile geographical restriction on level III trauma centers.  Finding no error, we affirm.

**Background**

On April 11, 2018, St. Joseph, a licensed hospital, applied to the Missouri Department of Health and Senior Services for designation as a level III trauma center.[4]  By letter dated May 10, 2018, the Department denied St. Joseph's application because St. Joseph "is located approximately 8.9 miles from St. Luke's Hospital of Kansas City (currently a Missouri level I trauma center) and approximately 9.4 miles from Research Medical Center (currently a Missouri level I trauma center)."  Thus, the Department concluded that granting St. Joseph's application would violate the 15-mile rule.

On June 11, 2018, St. Joseph filed a complaint with the Missouri Administrative Hearing Commission (AHC) challenging the denial of St. Joseph's application and the validity of the 15-mile rule.  The Department filed a motion for summary decision, which the AHC granted on January 29, 2019, affirming the Department's denial of St. Joseph's application based on the

---

services] law in promoting state-of-the-art emergency medical services in the interest of public health, safety and welfare."

[2] St. Joseph's opening brief contained five points relied on but, in its reply brief, St. Joseph withdrew its first two points.  For clarity, we refer to St. Joseph's remaining three points as Points I, II, and III, respectively.

[3] All statutory references are to the Revised Statutes of Missouri, Supp. 2020.

[4] A "[t]rauma center is a hospital that has been designated . . . to provide systematized medical and nursing care to trauma patients."  19 C.S.R. § 30-40.410(1)(CC) (2022).

15-mile rule but noting that the AHC lacks authority to declare regulations invalid or unconstitutional, issues which the AHC found St. Joseph had preserved for judicial review.

St. Joseph then filed a petition and an amended petition for declaratory judgment, judicial review, and injunctive relief. As relevant to the three points raised on appeal, the amended petition claimed that the 15-mile rule violated chapter 536 because the rule was "in conflict with state law, and/or is so arbitrary and capricious as to be unreasonably burdensome upon persons affected." St. Joseph also sought a declaration that the 15-mile rule is a special law prohibited by article III, § 40(28) of the Missouri Constitution.

A bench trial was held on February 11, 2021. Following admission of stipulated exhibits and opening statements, St. Joseph rested and moved for a directed verdict; the motion was denied. Two witnesses testified for the Department. Nicole Gamm, manager of the Time Critical Diagnosis Unit within the Department's Bureau of Emergency Medical Services, testified that Missouri hospitals may voluntarily apply for designation as time-critical diagnosis centers for trauma. There are three levels of designation with level I being the highest. Level I centers have the most resources and specialists. Level II centers are similar to level I centers, but are not required to have specialists for burns, limb reattachment, and pelvic and spine care. According to Gamm, level III centers "have very limited capacity, very limited resources, and basically [are] referral center[s], they usually work with a level I or II hospital to get the patient a rapid transport to one of those higher centers of care that have the specialists to take care of those patients."

Gamm testified that trauma requires multidisciplinary specialty care because different parts of the body may be injured and diagnosing the injuries is time critical. "[M]inutes matter with these patients," and the purpose of Missouri's system of designated trauma centers is to "get the right patient to the right place [in] the right amount of time." Gamm was not employed by the

3

Department when the 15-mile rule was promulgated and, thus, she could not speak to why the Department chose that distance.[5] But Gamm explained that Missouri's trauma center regulations are based on guidance from the American College of Surgeons (ACS).[6] The 15-mile rule allows patients who are "critical" to get "definitive care" in a reasonable amount of time. For example, level III trauma centers are not required to have a general trauma surgeon or an anesthesiologist on site at all times or have a fully staffed and available operating room, meaning a patient who is taken to a level III center may have to wait for lifesaving care.[7] And, if the patient needs to be transferred to a level I or II center to receive care, the delay in treatment caused by the transfer could increase the likelihood of a negative outcome. "People are hurt when they are delayed by going to an inappropriate center that does not have the capability and capacity to treat a severely injured patient."

Jeffrey Coughenour, a trauma surgeon at the University of Missouri/Columbia, testified that unrestricted expansion of trauma centers results in increased costs and dilution of patient volume which decreases the patient care experience of individual centers. He cited "a fairly sizable amount of surgical literature" describing a direct correlation between a trauma center's patient volume and experience and the quality and efficiency of care that center provides. "It is fairly widely accepted that a mature trauma system will decrease the risk of death anywhere from 15 to 20 percent." Dr. Coughenour believes 15 miles "is probably the best reasonable answer for avoiding multiple centers . . . be[ing] stacked up close to each other but still providing a more

---

[5] In fact, no one currently employed by the Department was involved in promulgating the 15-mile rule in 1998, and rulemaking documents from that time do not explain how a 15-mile geographical restriction on level III centers would serve public health, safety, and welfare.

[6] Gamm acknowledged that ACS now has a needs-based assessment tool for trauma center designation; Missouri has not adopted that tool.

[7] At level III trauma centers, a general trauma surgeon and an anesthesiologist have to be promptly available, which means arrival at the bedside within 30 minutes of notification. Level I trauma centers also must have a neurosurgeon "in house" to provide specialty care to patients with traumatic brain injuries; whereas level III trauma centers are not required to have a neurosurgeon available.

uniform coverage for that particular area." He also explained that the ACS adopted a needs-based assessment tool for trauma center designation in 2015, but that tool has not been widely validated: Missouri is "still trying to work our way through how [the needs-based assessment tool] can be used."

In its judgment and order dated July 12, 2021, the trial court concluded that the 15-mile rule is "not so arbitrary and capricious as to be unreasonably burdensome on persons affected." The court found that professional opinion and surgical literature "support patients going to trauma centers with the volume and experience to handle [those] trauma patients," and the 15-mile rule is a reasonable limitation to avoid "the unrestricted expansion of trauma centers in Missouri that [would] dilute the overall patient volume and decrease the experience of any one particular center." The court concluded,

> The Department has implemented this fifteen (15) mile restriction on level III trauma centers in order to ensure severely injured trauma patients are sent to trauma centers (level I and II) which can provide definitive care in order to ensure the best outcome for the patients. Level I and II trauma centers provide the subspecialties, staffing and resources to fully care for severely injured trauma patients thus reducing the morbidity and mortality of trauma patients, without requiring transfer to a higher level of care. Trauma patients get timely and medically appropriate care when they are sent to the higher levels of trauma centers (levels I and II) instead of the level III trauma center that is within fifteen (15) miles of the level I and II trauma centers.

The court also found that the Department offered evidence showing that the reasons for adopting the 15-mile rule have remained consistent since the rule was promulgated in 1998.[8] As for St. Joseph, the court concluded that the hospital "provided no evidence to dispute the [Department's] evidence that restricting level III trauma centers from being within 15 miles of

---

[8] The court based this conclusion primarily on the fact that the requirement for level III trauma centers has always been that a trauma surgeon must be at the bedside within 30 minutes of notification, and "the extra fifteen miles that emergency medical services would have to transport [a] severely injured patient[ to a level I or II facility] is very likely to be less than the thirty (30) minute time frame for a general trauma surgeon to respond to the hospital to care for the severely injured trauma patient."

level I or II centers promotes state[-]of[-]the[-]art emergency medical services in the interest of public health, safety and welfare." As to St. Joseph's constitutional challenge, the court questioned whether state regulations are subject to the Missouri Constitution's article III, § 40(28) prohibition on special laws, but the court nevertheless considered the merits of St. Joseph's argument and concluded that the 15-mile rule is constitutional because it has a rational basis. St. Joseph appeals.

## Standard of Review

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wilson v. Trusley*, 624 S.W.3d 385, 396 (Mo. App. W.D. 2021) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014)). We review questions of statutory, regulatory, and constitutional interpretation *de novo*. *Reuter v. Hickman*, 563 S.W.3d 816, 819 (Mo. App. W.D. 2018); *In re E.R.V.A.*, 637 S.W.3d 100, 106 (Mo. App. W.D. 2021).

## Analysis

St. Joseph raises three points on appeal. In its first point, St. Joseph challenges, as against the weight of the evidence, the trial court's finding that the 15-mile rule is not arbitrary and capricious under § 536.014(3). St. Joseph's second and third points challenge the trial court's conclusion that the 15-mile rule is not barred by article III, § 40(28), of the Missouri Constitution.[9] We address each point in turn.

---

[9] For the first time at oral argument, St. Joseph argued that the Department's notice of proposed rulemaking for the 15-mile rule failed to comply with § 536.021.2(1) because the notice did not include an adequate statement of the reason(s) for the proposed rule. St. Joseph did not raise this issue in its brief. "An appellate court will not consider arguments not raised in a party's brief." *State ex rel. Vacation Mgmt. Sols., LLC v. Moriarty*, 610 S.W.3d 700, 703 (Mo. banc 2020) (citing Rule 84.13(a)).

**A. St. Joseph failed to prove that the trial court erred in concluding that the 15-mile rule is not arbitrary and capricious.**

In its first point, St. Joseph argues that the trial court's finding, under § 536.014, that the 15-mile rule is not arbitrary and capricious is against the weight of the evidence because the Department could not explain why it adopted the 15-mile geographical restriction in 1998 and the evidence supported, instead, a needs-based assessment that incorporates travel times.

"Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. banc 2019) (quoting *Ivie*, 439 S.W.3d at 205). "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Wilson*, 624 S.W.3d at 401 (quoting *Ivie*, 439 S.W.3d at 205). "In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.* (quoting *Ivie*, 439 S.W.3d at 206). "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* at 402 (quoting *Ivie*, 439 S.W.3d at 206). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 401 (quoting *Ivie*, 439 S.W.3d at 206). "When reviewing the record in an against-the-weight-of-the-evidence challenge, [we] defer[] to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." *Id.* at 401-02 (quoting *Ivie*, 439 S.W.3d at 206).

As the party asserting an against-the-weight-of-the-evidence challenge, St. Joseph must engage in the following four-step analysis:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Reichard v. Reichard*, 637 S.W.3d 559, 589 (Mo. App. W.D. 2021) (quoting *In re B.K.F.*, 623 S.W.3d 792, 796-97 (Mo. App. W.D. 2021)). As the challenger, St. Joseph bears the burden of showing that the trial court's finding is against the weight of the evidence. *Wallace v. Frazier*, 546 S.W.3d 624, 628 n.2 (Mo. App. W.D. 2018).

St. Joseph identifies the factual proposition that it challenges, which is the trial court's finding, under § 536.014, that the 15-mile rule is not arbitrary and capricious.[10]

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which [the legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Beverly Enters.-Mo. Inc. v. Dep't of Soc. Servs.*, 349 S.W.3d 337, 345 (Mo. App. W.D. 2008) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

---

[10] In pertinent part, § 536.014 declares any state regulation invalid if it "conflict[s] with state law[] or . . . is so arbitrary and capricious as to create such substantial inequity as to be unreasonably burdensome on persons affected." § 536.014(2) and (3).

8

And St. Joseph identifies some evidence in the record that could be viewed as contrary to the finding that the 15-mile rule is not arbitrary and capricious, namely the Department's inability to present contemporaneous evidence supporting promulgation of the 15-mile rule in 1998 and the ACS's adoption of a needs-based assessment tool that considers travel times.

But St. Joseph fails to acknowledge the evidence and inferences that support the trial court's finding. Gamm testified that the 15-mile rule allows patients who are "critical" to get "definitive care" in a reasonable amount of time: the rule "get[s] the right patient to the right place [in] the right amount of time." Gamm also testified that the rule decreases the likelihood that a trauma patient needing level I or II care would be taken to a nearby level III center and risk a delay in treatment (which increases negative outcomes) because either a specialist has to be called in or the patient has to be transferred to a level I or II center able to provide a higher level of care.[11] Dr. Coughenour testified that unrestricted expansion of trauma centers results in increased costs and dilution of patient volume which decreases the patient care experience of an individual center. He cited "a fairly sizable amount of surgical literature" describing a direct correlation between a trauma center's patient volume and experience and the quality and efficiency of care that center provides, noting, "It is fairly widely accepted that a mature trauma system will decrease the risk of death anywhere from 15 to 20 percent." And St. Joseph "fails to demonstrate why the favorable evidence and inferences were so lacking in probative value, when considered in the context of the entire record, as to fail to induce the finding that [the 15-mile rule is arbitrary and capricious]." *Reichard*, 637 S.W.3d at 589.

---

[11] We note that § 190.243.2 states, "[w]hen initial transport from the scene of illness or injury to a trauma . . . center would be prolonged, the . . . severely injured patient may be transported to the nearest appropriate facility for stabilization prior to transport to a trauma . . . center."

9

When weighing the contrary evidence against the favorable evidence, St. Joseph equates the fact that the Department no longer has contemporaneous records demonstrating why the 15-mile restriction was adopted in 1998 with a finding that the Department acted improperly by relying on inappropriate factors, failed to consider an important aspect of the issue, or ignored the evidence before the Department at that time. But the fact that the Department does not have contemporaneous records, alone, does not equate to a finding that the resulting rule is arbitrary and capricious, an issue on which St. Joseph bears the burden of proof. And, under our standard of review, we defer to the trial court's findings that (1) the reasons for adopting the 15-mile rule have remained consistent since 1998, and (2) St. Joseph failed to provide any evidence that the 15-mile rule does not promote state-of-the-art emergency medical services in the interest of public health, safety and welfare, as required by § 190.185.[12]

Because St. Joseph did not engage in the four-step analysis for an against-the-weight-of-the-evidence challenge, St. Joseph failed to carry its burden to show that the trial court's finding that the 15-mile rule is not arbitrary or capricious is against the weight of the evidence.

Point I is denied.

---

[12] St. Joseph relies on *Barry Service Agency Co. v. Manning*, 891 S.W.2d 882 (Mo. App. W.D. 1995), to support the argument that the 15-mile rule is arbitrary and capricious, but we find *Manning* distinguishable. *Manning* involved a challenge to a statute regulating the interest rates and fees charged for unsecured loans under $500. *Id.* at 885. Appellants argued that the Director of the Missouri Department of Economic Development's Division of Finance "did not sufficiently identify the factors he uses to determine 'appropriateness' and articulated no reasonable factual or logical basis for disapproving [appellants'] proposed rates as being 'too high' to be 'appropriate.'" *Id.* at 891. The court agreed, finding that appellants met "their burden to show that the Director acted arbitrarily, capriciously and unreasonably in determining that their rates were 'inappropriate.'" *Id.* at 892. But, in *Manning*, the Director testified regarding the basis for his decision and the appellants offered additional evidence and testimony demonstrating that the Director's decision "was not based on substantial evidence and, was, in fact, the product of a process in which he completely failed to consider important aspects or factors of the issues before him." *Id.* at 894. In contrast, St. Joseph did not offer any evidence or testimony showing that the 15-mile rule was not based on substantial evidence or that the Department overlooked important issues when it adopted the rule.

**B. St. Joseph failed to prove that the trial court erred in concluding that the 15-mile rule is not barred by article III, § 40(28), of the Missouri Constitution.**

St. Joseph's remaining two points pertain to the special law prohibition in article III, § 40(28), of the Missouri Constitution;[13] thus, we discuss these points together.

In Point II, St. Joseph asserts that the trial court erred in holding that the 15-mile rule is not subject to article III, § 40(28), because state regulations must comply with state law, including the Missouri Constitution. But St. Joseph mischaracterizes the trial court's judgment. While the court questioned the applicability of article III, § 40(28), to state regulations, the trial court did not hold that article III, § 40(28), does not apply to regulations like the 15-mile rule, and we will not fault the court for making a decision it did not, in fact, make. *See Hall v. Utley*, 443 S.W.3d 696, 708 (Mo. App. W.D. 2014) (declining to find error in entry of an order that either did not exist or was not provided to the court).

Point II is denied.

In Point III, St. Joseph contends that the trial court erred in concluding that the 15-mile rule is not prohibited by article III, § 40(28), because there is no rational basis supporting imposition of a geographical restriction on level III trauma centers.

"[E]very law is entitled to a presumption of constitutional validity . . . and if the line drawn by the legislature [or department] is supported by a rational basis, the law is not local or special and the analysis ends."[14] *City of Aurora v. Spectra Commc'n Grp., LLC*, 592 S.W.3d 764, 780

---

[13] In relevant part, article III, § 40(28), states, "The general assembly shall not pass any local or state law . . . granting to any corporation, association or individual any special or exclusive right, privilege or immunity." St. Joseph argues that the 15-mile rule is a special law because it grants level I and II trauma centers rights and privileges to receive patients over level III trauma centers solely based on geographical proximity.

[14] If the line drawn by the legislature or department is not supported by a rational basis, the party challenging the law must then show either that it violates one of the prohibitions in article III, § 40(1)-(29), or that it is "one where a general law can be made applicable" under article III, § 40(30). *City of Aurora v. Spectra Commc'n Grp., LLC*, 592 S.W.3d 764, 780 (Mo. banc 2019). Here, we need not reach this second step in the special law analysis because there is a rational basis for the 15-mile rule.

(Mo. banc 2019). "Under rational basis review, [we] will uphold a statute [or regulation] if [we] find[] a reasonably conceivable state of facts that provide[s] a rational basis for the classifications." *Id.* at 781 (quoting *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 378 (Mo. banc 2012)). "Rational basis review . . . does not require that the fit between the [regulation] and government interest be exact, but merely reasonable . . . ." *Glossip v. Mo. Dep't of Transp. & Hwy. Patrol Employees' Ret. Sys.*, 411 S.W.3d 796, 807 (Mo. banc 2013) (internal quotation marks omitted). We "will not substitute [our] judgment for that of the [department] as to 'the wisdom, social desirability or economic policy underlying a [regulation].'" *Mo. Prosecuting Att'ys & Cir. Att'ys Ret. Sys. v. Pemiscot Cnty.*, 256 S.W.3d 98, 102 (Mo. banc 2008) (quoting *Kohring v. Snodgrass*, 999 S.W.2d 228, 233 (Mo. banc 1999)). "[U]nder a rational basis test, [we] do[] not have to determine whether the [department] 'should have' done something different or whether there is a better means to accomplish the same goal, and certainly not whether the chosen means is the best method." *Linton v. Mo. Veterinary Med. Bd.*, 988 S.W.2d 513, 516 (Mo. banc 1999). The party challenging the constitutionality of a regulation bears the burden of overcoming the presumption of validity. *Id.* at 515; *Amick v. Dir. of Revenue*, 428 S.W.3d 638, 640 (Mo. banc 2014).

Ensuring time-critical access to appropriate levels of care for trauma patients is a rational basis for the 15-mile rule. And the evidence presented at trial supports the court's conclusion that the 15-mile rule allows trauma patients access to the care they need in a reasonable amount of time by preventing patients who need level I or II care from going to a nearby level III trauma center and then having to be transferred to a higher level of care. Gamm testified that the delay in treatment caused by the need to transfer a patient increases the likelihood of a negative outcome for the patient. Dr. Coughenour testified that unrestricted expansion of trauma centers lowers each

center's patient volume, which decreases the quality and efficiency of care that center provides and increases mortality rates. The trial court found the testimony of Gamm and Dr. Coughenour credible, and we defer to the court's credibility determinations. *Wilson*, 624 S.W.3d at 401-02. Thus, the testimony provided ample evidence that the 15-mile rule is supported by a rational basis; St. Joseph failed to meet its burden to show otherwise.

Point III is denied.

## Conclusion

On this record, the trial court correctly concluded that the 15-mile rule was not arbitrary and capricious and that the rule is supported by a rational basis. The trial court's judgment is affirmed.

Karen King Mitchell, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.

13