

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN RE MID-STATES MATERIALS, LLC
PERMIT NO. 1236-A2; THE OSAGE
NATION,

        Appellant,

RANDAL S. DOBYNS AND LESLIE R.
DOBYNS, INDIVIDUALLY AND AS
TRUSTEES OF THE DOBYNS FAMILY
TRUST DATED OCTOBER 15, 2018,

        Appellants,

      v.

MISSOURI DEPARTMENT OF NATURAL
RESOURCES & MISSOURI MINING
COMMISSION,

        Respondents,

MID-STATES MATERIALS, LLC,

        Respondent.

WD87090 (Consolidated with
WD87144)

Opinion filed:  December 17,
2024

## APPEAL FROM THE MISSOURI DEPARTMENT
## OF NATURAL RESOURCES

Division Two:  Alok Ahuja, Presiding Judge, Edward R. Ardini, Jr., Judge
and W. Douglas Thomson, Judge

Randal and Leslie Dobyns and the Osage Nation appeal from the Missouri

Mining Commission's (MMC) final decision granting Mid-States Materials a

permit to mine limestone at a site to be called the Bates City Quarry. On appeal, both the Dobyns Appellants and the Osage Nation argue the MMC erred in entering its final decision because Mid-States's application failed to comply with Section 444.772.2(1). The Dobyns Appellants also argue the MMC erred in entering its final decision because the Bates City Quarry will unduly impair their health, safety, and livelihood. The Osage Nation also argues on appeal that Mid-States's permit should be rescinded because it violates Missouri's Unmarked Human Burial Sites Act. Finally, the Osage Nation argues the MMC acted arbitrarily, capriciously, and unreasonably in granting Mid-States a permit without imposing a condition that an archaeological survey be conducted before mining activity begins. We reverse and remand for proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL HISTORY

This appeal concerns Mid-States Materials's permit to mine limestone at the Bates City Quarry (also referred to as "the Property"). The Department of Natural Resources, through the Missouri Mining Commission, issued Mid-States's permit to mine limestone (the "Permit"). The Appellants collectively are adjacent landowners who object to the issuance of the Permit.

Randal Dobyns and Leslie Dobyns, as individuals and as Trustees of the Dobyns Family Trust ("Dobyns Appellants") own property adjacent to Mid-States Materials's proposed surface mining. The Dobyns Appellants timely filed their

2

objections to the Permit before the Administrative Hearing Commission (AHC) and timely filed their appeal before this Court.

The Osage Nation is also an adjacent landowner and owns land that is entirely surrounded by Mid-States's proposed mining at the Bates City Quarry. On the land owned by the Osage Nation are Osage burial mounds (the "known Osage burial site"). The Osage Nation also timely filed their objections to the Permit before the AHC and timely appealed before this Court.

## A.    The Mining Application Process

To engage in mineral mining, Mid-States must first obtain a permit. *See* Sections 444.770.1; 444.772.1; 444.786; 10 CSR 40-10.010(1). The Department of Natural Resources administers the Missouri Land Reclamation Act (the "Act"), under which Mid-States must apply to permit limestone mining. *See* Section 444.760 *et. seq.* The commercial mining of limestone, which Mid-States seeks to do in this case, requires a permit from the Missouri Mining Commission (MMC). *See* 10 C.S.R. 40-10.010(1)(A). The MMC has the power to review and approve all applicable mining applications. Section 444.767. The MMC staff director receives a written application for a permit and makes a threshold determination regarding whether the application is complete. Section 444.772.1. Once the staff director determines that an application is complete, the applicant must issue a public notice and comment period that, in this case, involved a public hearing. Section 444.772.10. The staff director of the MMC must investigate a mining permit application, consider all public comments, issue or deny the permit, and impose

3

reasonable conditions upon the permit. Section 444.773.1. The staff director's decision is deemed the decision of DNR.

The staff director's decision is appealable to the Administrative Hearing Commission (AHC). *See* Section 444.773.2; Section 460.013; Section 621.250.1. On appeal to the AHC, DNR bears the burden to prove by a preponderance of the evidence that it lawfully issued the permit. Section 640.012. The AHC then makes a recommended decision to the MMC on "permit issuance, denial, suspension, or revocation." Section 444.773.2. The AHC considers whether Sections 444.773.2-.5 of the Act have been satisfied. The AHC may also consider whether an interested party's health, safety, or livelihood will be unduly impaired by the issuance of the permit, and whether the applicant has displayed a pattern of noncompliance "that suggests a reasonable likelihood of future acts of noncompliance." Section 444.773.2. The AHC may also recommend any permit be subject to reasonable conditions consistent with the Act. *See Lake Ozark-Osage Beach Joint Sewer Bd. v. Mo. Dep't of Nat. Res.*, 491 S.W.3d 667, 676-78 (Mo. App. W.D. 2016).

Once the AHC issues its recommended decision, the MMC issues its final decision, which is then appealable to this Court.

**B.    Mid-States's Mining Application**

On April 17, 2023, Mid-States applied for an expansion permit for surface mining of limestone at a new quarrying site known as the Bates City Quarry.[1] The application included a five-page DNR Mining Plan form.

---

[1] Mid-States already had a permit to mine at a different location.

4

The information Mid-States listed on page three of that form is at issue in this appeal. Page three includes several critical elements. First, an applicant must list the name, address, and phone number of the landowner and is instructed to attach additional sheets if necessary. In this section, Mid-States listed one landowner – M.K. – and his address and phone number.[2] Second, an applicant must list the mineral rights owner or indicate that the mineral rights owner is the same as the landowner. In this case, Mid-States indicated that the mineral rights owner was the same as the landowner and did not list any additional individuals.

Third, page three includes a block asking the applicant to indicate the source of their legal right to engage in mining and offers several choices: mineral deed, warranty deed, lease, verbal, or other. This block also asks for the date of any such agreement granting the applicant a right to mine. In this section, Mid-States indicated the source of its legal right to mine was a lease dated June 1, 2022.

Finally, page three also requires the landowner to attest to the following:

1.    I have received a copy, understand and give approval of the proposed post-mining land use(s) and revegetation plan(s) to be utilized during reclamation.

2.    I understand that if the operator seeks to revise the post-mine land use(s) or revegetation plan(s), the operator shall obtain my approval and signature. I will be given a copy of the revised post-mining land use(s) and revegetation plan(s) prior to the revision being implemented.

---

[2] Section 509.520.1 states that "any judgment or orders issued by the court ... shall not include the following confidential and personal identifying information: ... (5) Witness information, including the name, address, and other contact information of the witness." Therefore, as required by this statute, we do not identify the landowner(s) by name.

3.    I hereby grant to the Staff Director of the Land Reclamation Program and authorized representatives the right of entry upon our lands or surface mining operations for the purpose of making necessary field inspections, covering land reclamation in order to ensure compliance with The Land Reclamation Act, Sections 444.760 to 444.790, RSMo.

M.K. is the sole signatory listed on Mid-States's application attesting to the above.

On May 11, 2023, DNR deemed Mid-States's application complete and instructed Mid-States to provide public notice for comment. Mid-States informed adjacent landowners, including the Dobyns Appellants and the Osage Nation, who both filed their written comments in opposition to the Bates City Quarry and requested an informal public meeting to voice their opposition.

The informal public meeting was held on July 19, 2023. The Dobyns Appellants and the Osage Nation both offered their written and oral statements in opposition to the Bates City Quarry. Despite such opposition, on August 16, 2023, DNR rendered its decision to approve and issue Mid-States a mining permit: Permit No. 1236-A2.

## C.    Appeal before the AHC

The Dobyns Appellants and the Osage Nation timely filed their complaints before the AHC to appeal DNR's decision to issue the Permit.[3] The Dobyns Appellants alleged that their health, safety, and livelihood would be unduly impaired by the Bates City Quarry and the DNR decision to issue the Permit was arbitrary, capricious, and unreasonable. The Osage Nation complained that DNR erred by not issuing the Permit with the condition that an archeological survey be

---

[3] The AHC later consolidated the complaints.

6

completed on the Bates City Quarry to ensure there were no additional Osage burial mounds prior to mining.

Mid-States was permitted to intervene in the consolidated AHC appeals on October 2, 2023. The Osage Nation filed a motion to stay the Permit's issuance until the AHC decided the appeal, which was granted on November 17, 2023.

The AHC conducted an evidentiary hearing on November 29, 2023. As part of the evidence, the AHC received a trustee's deed dated November 1, 2018 that listed M.K. as the sole grantee of the Bates City Quarry property.

The day before the hearing, in response to the Osage Nation's motion to compel discovery, Mid-States disclosed for the first time the June 1, 2022 lease (the "Lease") that it claimed on its mining application gave Mid-States the legal authority to mine the Bates City Quarry. The Lease was never presented to or requested by DNR during the application process, as is DNR's practice. At the hearing before the AHC, a DNR representative stated that they do not require the document granting a legal right to the applicant to mine to be attached to the application. Instead, DNR relies on the signature of the applicant attesting the application is complete and accurate.

The Lease identified M.K. and his wife, C.K., as "Landlord," collectively. The Lease grants Mid-States an option to:

> (a) conduct such inspections, reviews, studies, and tests as it deems reasonably appropriate to determine the existence and extent of limestone, stone, rock, sand, gravel, soil, and other minerals, materials, and aggregates on the Property, (b) seek and obtain the necessary zoning and permits for its intended operations on the Property, and (c) elect to lease the Property on the terms set forth in [the Lease].

The Lease also stated in part,

> 5. <u>Ownership and Title</u>.  Landlord represents and warrants that it has good and marketable title to the Property subject to any existing easements, including the limestone, stone, sand, gravel, and other minerals, materials, and aggregates described herein, that is has the unrestricted right to enter into and fully perform this Agreement, and that Tenant shall have undisturbed enjoyment of its right in and to the Property provided for in this Agreement.

The Lease requires Mid-States to pay a minimum annual rent, an annual agricultural loss payment, and royalties for all materials mined to M.K. and C.K. as Landlord.  Both M.K. and C.K. signed the Lease as Landlord.

Despite C.K. being listed as a Landlord on the Lease, Mid-States did not list her name as either a property owner or mineral rights owner on its mining permit application.  Both the Dobyns Appellants and the Osage Nation argued that because C.K. was not listed on Mid-States's mining application, the application did not comply with Section 444.772.2(1), which requires a mining permit applicant to disclose all parties with any interest in the land to be mined, and thus DNR could not issue the Permit.

The AHC issued its recommended decision on January 5, 2024.  The AHC found that Mid-States's permit application did not comply with Section 444.772.2(1) because it did not disclose C.K.'s interest in the Property.  The AHC determined that M.K. "is not the sole and separate owner of the interest in the land represented in the Lease.  Therefore, it was not enough that only [M.K.] was identified in the permit application as landowner and mineral-rights owner."  Specifically, the AHC determined,

8

Neither this Commission nor the MMC can cure this deficiency on appeal from [DNR's] issuance of the permit. 10 CSR 40-10.020 ("The applicant *must* submit the required information *before* a permit may be issued."); *see Nexgen*, 677 S.W.3d at 604-05. Where an application was incomplete, the application should have been denied and no permit should have been issued. *See id.* at 601-03. Therefore, the Permit must be rescinded.

The AHC made alternative recommendations should the MMC reject the AHC's recommendation that the Permit should be rescinded. Alternatively, the AHC recommended the MMC issue the Permit without any conditions. The AHC determined that the other arguments both the Dobyns Appellants and the Osage Nation presented were unpersuasive.

## D.    The MMC's Final Decision

The MMC convened a special commission meeting to review the AHC's record and recommended decision regarding the Permit on February 22, 2024. The parties also presented oral arguments in support of their positions.

On March 27, 2024, MMC issued its Final Decision, which declined to adopt the AHC's recommendation that the Permit be rescinded for failure to comply with Section 444.772.2(1). The MMC disagreed with the AHC and found that C.K. did not have an ownership interest in the Property. The MMC interpreted Section 444.772.2(1) as requiring disclosure of all ownership interests – and only ownership interests – in the property.

The MMC adopted the AHC's recommendation in the alternative and issued the Permit without conditions. In doing so, the MMC adopted the AHC's findings and conclusions against the Dobyns Appellants and the Osage Nation.

This appeal follows.

9

## II.      STANDARD OF REVIEW

"Administrative review of a contested case, as here, is governed by Section 536.140." *Nexgen Silica, LLC v. Mo. Dep't of Nat. Res.*, 677 S.W.3d 594, 600 (Mo. App. E.D. 2023) (citing *Nighbert v. City of St. Louis*, 658 S.W.3d 603, 605 (Mo. App. E.D. 2022).

> We will uphold an agency's decision unless it is: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) not supported by competent and substantial evidence upon the whole record; (4) unauthorized by law; (5) made upon unlawful procedure or without a fair trial; (6) arbitrary, capricious, or unreasonable; or (7) an abuse of discretion. Section 536.140.2; *Nighbert*, 658 S.W.3d at 605-06. We review the agency's decision to determine whether the record in its entirety contains sufficient competent and substantial evidence to support the decision. *Id.* at 606. We review the whole record, and we no longer view the evidence in the light most favorable to the agency's decision. *Id.* We defer to the agency's findings of fact so long as they are supported by competent and substantial evidence. *Steck v. Mo. Dep't of Nat. Res.*, 623 S.W.3d 176, 180 (Mo. App. W.D. 2021). We review questions of law *de novo. Saxony Lutheran High Sch., Inc. v. Mo. Dep't of Nat. Res.*, 404 S.W.3d 902, 906 (Mo. App. E.D. 2013).

*Nexgen Silica*, 677 S.W.3d at 600.

## III.      ANALYSIS

The Dobyns Appellants bring two points on appeal. The Osage Nation brings three points on appeal. The Appellants collectively argue in their first points that Mid-States's mining application failed to comply with Section 444.772.2(1) because it did not identify all parties with an interest in the land to be mined. We find this issue dispositive and therefore do not address the Appellants' remaining points.

## A. POINT I

Both Appellants argue in Point I that the Missouri Mining Commission erred in issuing Permit No. 1236-A2 to Mid-States because the MMC erroneously declared or applied the law by finding Mid-States's permit application complied with Section 444.772.2(1), which requires a permit applicant to identify all persons with an interest in the land to be mined.

We review matters of law, including statutory interpretation, *de novo*. *Nexgen Silica*, 677 S.W.3d at 601. "'Administrative rules and regulations are interpreted under the same principles of construction as statutes.'" *Matter of Trenton Farms Re, LLC v. Mo. Dep't of Nat. Res.*, 504 S.W.3d 157, 164 (Mo. App. W.D. 2016) (quoting *McGough v. Dir. of Rev.*, 462 S.W.3d 459, 462 (Mo. App. E.D. 2015)). An agency's interpretation and construction of a statute it administers is "entitled to great weight." *Matter of Trenton Farms*, 504 S.W.3d. at 164 (quoting *Beverly Enters.-Mo. v. Dep't of Soc. Servs., Div. of Med. Servs.*, 349 S.W.3d 337, 352 (Mo. App. W.D. 2008)).

Section 444.772.2 lists the information required to be in a mining permit application:

> Application for permit shall be made on a form prescribed by the commission and shall include:
>
> (1) *The name of all persons with any interest in the land to be mined*;
>
> (2) The source of the applicant's legal right to mine the land affected by the permit;
>
> (3) The permanent and temporary post office address of the applicant;

11

(4) Whether the applicant or any person associated with the applicant holds or has held any permits pursuant to sections 444.500 to 444.790, and an identification of such permits;

(5) *The written consent of the applicant and any other persons necessary to grant access to the commission or the director to the area of land affected under application* …;

(6) A description of the tract or tracts of land and the estimated number of acres thereof to be affected by the surface mining of the applicant for the next succeeding twelve months; and

(7) Such other information that the commission may require as such information applies to land reclamation.

(emphases added).  "The applicant must submit the required information *before* a permit may be issued." 10 CSR 40-10.020(1) (emphasis added).

"As required by section 444.772, an applicant shall submit a complete application package, including the authorized written consent of the applicant and any other persons necessary to grant access to the area of land affected under the application or permit during all phases of operation and reclamation." *Nexgen Silica*, 677 S.W.3d at 601 (citing 10 CSR 40-10.020(2)(B)).  "The applicant shall obtain a signed approval of the post-reclamation land use from the landowner, or shall provide other written proof that the applicant determined the post-reclamation land use in conjunction with the landowner." *Id.* at 601-02 (citing 10 CSR 40-10.020(2)(C)).

In its final decision, the MMC found that Section 444.772.2(1) requires only that landowners be identified on a mining application.[4] Even assuming this is true,

_____

4 Because, as explained below, it is clear that C.K. is a landowner of the property to be mined, we need not address whether the MMC's interpretation of Section

the MMC erred in determining that Mid-States's mining application complied with Section 444.772.2(1).

All parties agree that the issue presented in this case is similar to the Eastern District's decision in *Nexgen Silica*, although they argue over its application to its case. 677 S.W.3d at 598.

In *Nexgen Silica*, Nexgen applied for a permit to mine sandstone. *Id.* at 598. Nexgen submitted its application to the DNR, and in it, noted that its right to mine sandstone came from a lease. *Id.* at 598-99. Like in this case, Nexgen did not attach the lease agreement to its application. *Id.* at 599. In Nexgen's application for a mining permit, it noted that the Missouri Proppants, LLC ("MoPro") was the lessor in the lease agreement and granted Nexgen the right to mine. *Id.* The lease agreement stated that "[t]he members of [MoPro], consisting of GBB LLC and Longhorn Proppants LLC are collectively the owners (the "Property Owners") of that certain land (the "Property") containing approximately 217 acres of land...." *Id.* After the required notice and comment period, DNR issued Nexgen a mining permit. *Id.* Operation Sandstone, a limited liability company, its members, and supporters, resided in the immediate vicinity of the land Nexgen sought to mine. *Id.* at 598. Operation Sandstone appealed DNR's issuance of Nexgen's mining permit, arguing in part that Nexgen's application was deficient by failing to list all

---

444.772.2(1)'s "persons with an interest in the land to be mined" to refer only to landowners is correct. However, we note upon an initial review that the MMC's use of "landowners" on its mining application, which is different than Section 444.772.2's language, is potentially confusing to applicants and creates issues that, like in this case, must be litigated.

13

parties with an interest in the land to be mined as required by Section 444.772.2(1). *Id.* at 599.

While the appeal was pending before the AHC, Nexgen sought to amend its mining application by listing itself, MoPro, and GBB as parties with an interest in the land. *Id.* Nexgen did not list Longhorn on its amended application. *Id.* The AHC held a hearing and ultimately recommended that the MMC reverse DNR's decision to issue a permit to Nexgen. *Id.* at 600. The MMC issued its final decision and denied Nexgen's permit application because Nexgen "did not list all persons with any interest in the land." *Id.*

On appeal, the Eastern District held that the MMC properly determined that Nexgen's permit application was incomplete. *Id.* at 602. The Eastern District explained:

> Section 444.772.2(1) explicitly requires that the application contain "[t]he name of all persons with any interest in the land to be mined." *This statutory wording is clear, and we see no ambiguity that might confuse an applicant.* The mine plan form developed by DNR—as authorized by section 444.772.2 and 10 CSR 40-10.020(1)—requests the name and contact information of each landowner; asks whether the landowner is also the owner of the mineral rights; and if not, requests the name and contact information of the mineral rights owner. Nexgen's March 4, 2022 application involved seven tracts of land totaling 217 acres and identified nine record property owners, specifically eight individuals and one trust. Each of the identified property owners was also named as the mineral rights owner for their respective property. No other property owners with an interest in the land were listed....
>
> ...Nexgen did not seek to update, and did not identify MoPro, GBB, Longhorn, or *itself* on the application form as parties with an interest in the land prior to DNR's approval of the mining permit application. *Identifying only some owners of the land and some owners of the mineral rights for the property included in the mine plan, while excluding others, does not fulfill the statutory requirements.* Section 444.772.2(1) requires that "the

14

application shall include all names…" and failure to include all names results in an incomplete application. Further, 10 CSR 40-10.020.1 requires all required information must be submitted before a permit is issued.

*Id*. at 602-03 (emphases added).

Ultimately, the Eastern District determined, "[i]t is clear from the record that Nexgen did not list all parties with an interest in the land [including its own interest]…as required *before* a permit may be issued. As a result, Nexgen's application was substantially incomplete, and did not comply with the express requirements enumerated in section 444.772.2 or 10 CSR 40-10.020." *Id*. at 603 (emphasis in original).

In short, the Eastern District determined that Nexgen's permit application did not comply with Section 444.772.2 because the application failed to identify all parties who signed a lease and indicated in such lease that they were property owners of the land to be mined. Further, the Eastern District found that, as a lessee, Nexgen had an interest in the land to be mined. Accordingly, Nexgen's failure to identify *itself* on its initial application was also fatal to its mining application.

Here, the issue with Mid-States's permit application is the same problem found in Nexgen's permit application. In this case, Mid-States's mining application listed but one landowner: M.K. Mid-States indicated by check box that the mineral rights owner was the same as the landowner. Mid-States also marked that the source of its legal right to mine was the Lease signed on June 1, 2022. Mid-

15

States did not attach the Lease to its mining application, nor does DNR require it. M.K. signed the mining application as the sole landowner.

Later, as part of discovery ahead of the AHC hearing, the lease was produced. The Lease, the parties to which Mid-States was required to identify in the mining plan, makes it clear that C.K. is a person with an interest in the land to be mined. Section 444.772.2(1) and (2) is clear and unambiguous: permit applications must identify the "name of all persons with any interest in the land to be mined," and must include "[t]he source of the applicant's legal right to mine the land affected by the permit." As part of the Lease, M.K. and C.K. as Landlord stated that they are the property owners with good and marketable title of the land to be mined, and it is from both of them that Mid-States derives its mining right. Moreover, C.K. was also entitled to part of the revenue derived from Mid-States's extraction of minerals from the property, indicating that she was, at a minimum, an owner of mineral rights. Despite Mid-States's attestations on its application, the Lease itself was found to list both M.K. and C.K. as the Landlord who granted Mid-States permission to mine the land. Thus, C.K. should have been listed on Mid-States's permit application and Mid-States's failure to include C.K. rendered Mid-States's permit application substantially incomplete.

The Lease at issue in this case is substantially similar to the lease in *Nexgen*. The Lease identifies C.K. as a party who signed the lease and indicated that she has an ownership interest in the property to be mined. The Lease further indicates that C.K. and M.K. are collectively Landlord who own the Property on which Mid-States

16

seeks to mine. Therefore, the Lease indicates that C.K. has an ownership interest in the property to be mined. As such, Mid-States was required to identify her on its mining application.

Our decision is entirely consistent with *Nexgen*. When a mining applicant gains the right to mine land via lease, the lease identifies the parties who grant the mining applicant the legal right to mine, and that lease identifies parties as landowners, those parties must be disclosed on the mining application pursuant to Section 444.772.2(1).

The parties focus large parts of their briefs arguing over the exact nature of C.K.'s property interest in the land. Such focus is misplaced. Section 444.772.2(1) requires a permit applicant to identify the "name of all persons with any interest in the land to be mined." The Lease clearly identifies C.K. as an Owner of the property who has the authority to grant Mid-States access to the property to be mined and the right to receive the financial benefits of the Lease.[5] Section 444.772.2(1) requires Mid-States to disclose persons with *any* interest. Clearly, from the lease, C.K. has an interest.

Respondent DNR also warns this Court of the potential dangers in requiring Mid-States and other mining permit applicants to identify parties who have an

---

[5] As DNR states in their briefing, one purpose of requiring the mining applicant to disclose "all parties with an interest in the land to be mined" is to ensure that DNR has a legal right to enter the land to be mined to complete inspections as necessary under the Land Reclamation Act. When the mining applicant fails to list "all parties with an interest in the land to be mined," as Mid-States did here, then DNR's ability to carry out its duties is frustrated.

17

interest in the land to be mined other than an ownership interest because such "could lead to an indeterminate listing of names that are irrelevant to the question whether the applicant has a right of access to disturb and restore the land." Our opinion today states no more than the Eastern District did in *Nexgen*: any party named in a lease granting the applicant access to mine the land must be named in the application for mining permit pursuant to Section 444.772.2. Further, we do not rewrite what the legislature has written, but rather simply follow the statute they have crafted.

The MMC misapplied the law when it granted Mid-States's mining application when that application did not identify C.K. as a party with an interest in the land to be mined. The Permit should be rescinded. The Dobyns Appellants' and the Osage Nation's Point I is granted.

## IV.    CONCLUSION

The Missouri Mining Commission's final decision is reversed and remanded for proceedings consistent with this opinion.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

18